Filed 1/21/15  P. v. Cura CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FELIX CURA, JR.,<br><br>    Defendant and Appellant. | F067961<br><br>(Tulare Super. Ct. No. VCF272253)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Valeriano Saucedo, Judge.

Julie Schumer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Stephen G. Herndon, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant was convicted of nine counts of committing a lewd act upon a child. He challenges his convictions on the grounds that the prosecutor committed prejudicial misconduct during closing argument and that the trial court committed several instructional errors. We disagree and affirm.

## BACKGROUND

Defendant was charged with nine counts of committing a lewd act upon I.G., a child. (Pen. Code, § 288, subd. (a).)[1] As to each of the nine counts, the information alleged that defendant had committed the lewd act against more than one victim (i.e., I.G. and another child named C.S.). (§ 667.61, subd. (e)(4).) As to counts 1 through 5 and 9, the information alleged that in committing the lewd acts, defendant engaged in substantial sexual conduct with a victim under 14 years of age. (§ 1203.066, subd. (a)(8).)

A jury convicted defendant of all nine counts (§ 288, subd. (a)) and found true all substantial sexual conduct allegations (§ 1203.066, subd. (a)(8)). The jury found the multiple victim allegation true as to count 1 and not true as to counts 2 through 9. (§ 667.61, subd. (e)(4).)

The court sentenced defendant to a term of 15 years to life on count 1, consecutive to a term of 22 years on counts 2 through 9.

## TRIAL EVIDENCE

*I.G.*

Defendant is I.G.'s uncle. I.G. would go swimming at the home defendant shared with his wife at the time, who was I.G.'s aunt. When I.G. was eight, defendant began touching her "in the wrong places." Defendant touched her breasts, front "private" part,

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2.

and her "butt."[2]  Defendant also kissed I.G. multiple times, putting his tongue into her mouth.  Defendant also made I.G. touch his penis.

Defendant told I.G. he would give her a toy if she did not tell anyone.  I.G. felt uncomfortable and did not tell anyone until she was 10 years old.  Her mother asked whether defendant had ever touched her, and I.G. began crying and said, "[Y]es."

*C.S.*

C.S. is defendant's ex-brother-in-law's daughter.[3]  One day, when C.S. was eight, she was at her home with her parents, brothers, cousin, godmother, defendant and defendant's friend.  At one point, C.S. was in her brother's bedroom along with her brothers, defendant, and defendant's friend.  Defendant told C.S. to come sit on his lap, and she complied.  Defendant then touched her "private" over her clothes.  C.S. told her mother the next day.  That was the only time had defendant touched her.

Evidence of Uncharged Sexual Offenses

*V.R.*

Defendant was married to V.R.'s mother for about five years.  During that time, V.R. lived with her mother, defendant and siblings in a home in Selma.  One day, when V.R. was 10 years old, [4] she took a shower at home.  Afterwards, she put on underwear and a towel and walked through the living room.  Defendant, who had been watching television in the living room, grabbed V.R. by the arm and led her to her room.  Defendant touched her "chest area" then "moved down" to her "vaginal area."

V.R.'s 16-year-old sister, Ashley, walked in and saw what defendant had been

---

[2] Defendant touched each of these three places on her body multiple times.

[3] C.S. testified that defendant was her "tio."  When asked what "tio" means in English, C.S. said she forgot, but that she knew defendant was related to her.

[4] V.R. was 22 years old at the time of trial.

doing. Ashley asked what defendant was doing, and he said he was helping V.R. get dressed. She took V.R. to a different room and tried to contact their mother, but she was at work. They were able to contact their grandfather, who picked them up. The same day, V.R. spoke to police.

That was the only time defendant had touched V.R. inappropriately. V.R. never lived with defendant after that.

On cross-examination, V.R. testified that she did not like that defendant was married to her mother. When defendant would try to discipline her, she would disobey and say that he was not her father. On redirect, V.R. testified that before "all this happened"[5] she got along with defendant.

### *R.A.*

Defendant is R.A.'s adoptive father's son. Defendant is six or seven years older than R.A., a female. When R.A. was around age 6, she lived with defendant.[6] On more than one occasion, defendant "fondle[d]" R.A.'s "private parts" and stuck his penis between her legs. This happened "off and on" from when R.A. was six or seven until she was 13.

R.A. eventually learned about the allegations involving V.R. As part of the investigation into V.R.'s allegations, R.A. told police about what defendant had done to her.

### Defense

Defendant denied molesting I.G., C.S., V.R., and R.A. Defendant admitted he had been convicted for "[s]tolen cars" and for committing a lewd act on a child.

---

[5] This quotation is from the prosecutor's question to which V.R. responded affirmatively.

[6] R.A. was 32 years old at the time of trial.

**DISCUSSION**

## I. DEFENDANT HAS NOT SHOWN THE PROSECUTOR COMMENTED PREJUDICIAL MISCONDUCT DURING ARGUMENT

a.  The Prosecutor Did Not Improperly Comment on Facts Outside the Record

During closing argument, the prosecutor said:

"[Defendant] destroyed [the victims'] innocence, their sense of self and confidence, makes them doubt everything that they know."

Defendant argues that the prosecutor's statement is unsupported by evidence.  He notes there was no expert or lay evidence that defendant "had destroyed the girls' sense of innocence, their sense of self and confidence, making them doubt everything they know."

It is true that a prosecutor may not refer to facts not in evidence.  (*People v. Hill* (1998) 17 Cal.4th 800, 827–828.)  However, that does not mean a prosecutor is limited to parroting trial testimony verbatim during argument.  A prosecutor's argument may also be based on "reasonable inferences or deductions drawn from the evidence, and on matters that are common knowledge.  [Citation.]" (*People v. Mendoza* (2000) 24 Cal.4th 130, 172.)

Here, the prosecutor's argument was based on reasonable deductions drawn from the evidence adduced at trial that the victims were young girls molested by an older relative.  R.A. and C.S. testified that defendant's molestation made them "uncomfortable."  When R.A. learned about V.R.'s molestation case, she decided "this can't happen again."  R.A. felt she "needed to be a part of this to make this stop.  Enough is enough."  R.A. wanted V.R. to know that "she's not the only one that this happened to."  C.S. testified that she decided to tell her mother about the molestation because her bunny told her to be brave.  I.G. described defendant's conduct as touching her in the

5.

"wrong" places. The prosecutor's argument about the victims' loss of innocence and confidence was a reasonable inference from this evidence.

Moreover, even if the comment had been error, it was harmless. A victim's loss of their sense of innocence, self, or confidence is not an element of any of the crimes or special allegations at issue in defendant's trial. Even if the prosecutor's comment had been inappropriate, and even if the jury credited the statement, there is no reason to believe it affected the verdict.

    b.  The Prosecutor Did Not Improperly Comment on Defendant's Choice to Exercise His Right to Cross-Examination

During closing argument the prosecutor commended the victims' courage to testify. Then, the prosecutor said the victims had "endured" cross-examination.

Defendant argues that he has a constitutional right to cross-examine witnesses and that the "prosecutor's negative characterization of the victims as 'enduring' cross-examination improperly trod on that right." We disagree with defendant's characterization of the prosecutor's comment.

The prosecutor's statement was not critical of the defense for cross-examining the witnesses. Rather, the prosecutor merely acknowledged that cross-examination is often something to be "endured" rather than enjoyed, especially for young victims of sex crimes. Acknowledging the unpleasantness of having to answer certain questions in front of others is not equivalent to criticizing the questioner. We find no error.

## II. THE TRIAL COURT DID NOT ERR IN INSTRUCTING THE JURY WITH CALCRIM NO. 1191

Defendant next contends that CALCRIM 1191 violates due process.

Under Evidence Code section 1101, evidence of specific instances of a person's conduct is inadmissible to show that the person has a certain character and acted in conformance with that character on a specified occasion. (Evid. Code, § 1101, subd. (a).) One exception is set forth in CALCRIM 1191, which is based on Evidence Code section

6.

1108. That statute provides that in a sex crime prosecution, "evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1108, subd. (a).) Under the majority opinion in *People v. Villatoro* (2012) 54 Cal.4th 1152, "Evidence Code section 1108 applies to charged as well as uncharged offenses. [Citations.]" (*Id.* at p. 1182. (Conc. & dis. opn. of Liu, J.)

CALCRIM 1191 was given by the court in this case as follows:

"The People presented evidence that the defendant committed the crime of lewd act with a child under 14 that was not charged in this case.

"The crime is defined for you in these instructions. You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged offense.

"Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged offense, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision also conclude that the defendant was likely to commit and did commit Counts 1 through 9 as charged here.

"If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider, along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Counts 1 through 9. The People must still prove the charge beyond a reasonable doubt."

Defendant argues that the instruction was erroneous "because it expressly told the

7.

jury it could infer the defendant's guilt of the charged offenses if it found, based on evidence of another sexual offense, the defendant was predisposed to commit such crimes." We largely agree with defendant's description of the inference permitted by CALCRIM No. 1191. We disagree, however, with the notion that this inference is improper. To the contrary, the Supreme Court has expressly held that this "is a legitimate inference." (*People v. Reliford* (2003) 29 Cal.4th 1007, 1013.) "A jury may use 'the evidence of prior sex crimes to find that defendant had a propensity to commit such crimes, which in turn may show that he committed the charged offenses. [Citations.]" (*Ibid*.) Because the inference described by CALCRIM 1191 is permissible, we find no error.

Defendant also contends that CALCRIM 1191's introduction of a preponderance of the evidence standard confuses the appropriate burdens of proof when read in conjunction with instructions regarding reasonable doubt. (E.g., CALCRIM Nos. 220, 225.) This contention has also been rejected by the Supreme Court in the context of a similar instruction:

> "We do not find it reasonably likely a jury could interpret the instructions to authorize conviction of the charged offenses based on a lowered standard of proof. Nothing in the instructions authorized the jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination whether defendant committed a prior sexual offense .… The instructions instead explained that, in all other respects, the People had the burden of proving defendant guilty 'beyond a reasonable doubt.' [Citations.]" (*People v. Reliford*, *supra*, 29 Cal.4th at p. 1016.)

For the same reasons, we reject defendant's claims.

## III.    THE TRIAL COURT DID NOT ERR IN INSTRUCTING THE JURY WITH CALCRIM NOS. 301 AND 1190

The trial court instructed the jury with CALCRIM 1190, as follows: "Conviction of a sexual assault crime may be based on the testimony of a complaining witness alone." The trial court also instructed the jury with CALCRIM No. 301 as follows: "The

8.

testimony of only one witness can prove any fact.  Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence."

Defendant contends that giving both instructions was error because they are (1) duplicative and (2) improperly favor the testimony of the complaining witness in support of guilt.  Defendant concedes that the Supreme Court rejected a similar challenge to the CALJIC analogues of these instructions in *People v. Gammage* (1992) 2 Cal.4th 693 (*Gammage*).  He acknowledges that we, as a Court of Appeal, are required to follow *Gammage*, and he notes that he is simply preserving the issue for further review.

We reject defendant's contentions pursuant to *Gammage*.  The two instructions given in this case, as in *Gammage*, "correctly state the law."  (*Gammage*, *supra*, 2 Cal.4th at p. 700.)  "Although the two instructions overlap to some extent, each has a different focus."  (*Ibid.*)  "Because of this difference in focus of the instructions, we disagree with defendant … that, in combination, the instructions create a preferential credibility standard for the complaining witness, or somehow suggest that that witness is entitled to a special deference."  (*Id.* at p. 701.)

**DISPOSITION**

The judgment is affirmed.

_____
Poochigian, J.

WE CONCUR:


_____
Levy, Acting P.J.


_____
Kane, J.

9.