[No. S103084. Feb. 10, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY DAMON RELIFORD, Defendant and Appellant.

**COUNSEL**

Jonathan P. Milberg, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Marc E. Turchin, Acting Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan D. Martynec, Lawrence M. Daniels, Lance E. Winters, Valerie A. Baker and Theresa A. Cochrane, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BAXTER, J.**—In *People v. Falsetta* (1999) 21 Cal.4th 903 [89 Cal.Rptr.2d 847, 986 P.2d 182] (*Falsetta*), we rejected a due process challenge to Evidence Code section 1108, which allows evidence of the defendant's uncharged sex crimes to be introduced in a sex offense prosecution to demonstrate the defendant's disposition to commit such crimes. We also found that the trial court there had properly declined to give defendant's special limiting instruction and announced that "[i]n future cases, defendants may request an instruction based on revised CALJIC No. 2.50.01 (1999 rev.) [(6th ed. pocket pt.)], which contains language appropriate for cases involving the admission of disposition evidence." (*Falsetta, supra*, at p. 922.) "Without passing on each specific paragraph, or considering issues not before us, we think revised CALJIC No. 2.50.01 adequately sets forth the controlling principles under section 1108." (*Id.* at p. 924.)

Instead of clarifying the law, however, the dictum approving the 1999 revised CALJIC No. 2.50.01 spawned considerable debate in the Courts of Appeal. Now that the issue is squarely presented here, we conclude that the *Falsetta* dictum was correct and that the 1999 version of CALJIC No. 2.50.01 correctly states the law. We therefore affirm the Court of Appeal, albeit on different grounds.

### FACTUAL AND PROCEDURAL BACKGROUND

M.S. met defendant in early August 1991 at a Hollywood dance club. They dated and had a brief sexual relationship before she moved out of state.

In 1993, M.S. moved back to Los Angeles. Between May 1993 and March 1996, she occasionally ran into defendant at sporting events and parties but exchanged only a few words with him.

On March 8, 1996, M.S. went to the Hollywood club with a female friend. Defendant was at the club, too, but she spoke with him only briefly and kept moving. In the parking lot, after the club had closed, defendant grabbed her arm and demanded she go with him to get something to eat. He pushed her into his car and locked the door. Her purse and keys were still in her friend's car.

While defendant drove, he reminded her of "the time that we shared in '91" and said he loved her. After she complained that her friend was waiting for her back at the club, defendant increased the music volume. Eventually, he said the car was running out of gas and pulled onto the shoulder. Defendant used his cell phone to ask someone to call the American Automobile Association. M.S. then borrowed defendant's cell phone to call her girlfriend but could not reach her. When she tried to call her father, defendant unplugged the phone.

Defendant put his hand on her leg and said he was going to "take what's mine, what's mine. I remember how it felt back in 1991, and I'm going to feel that same feeling again." Despite her protestations, he raped her. M.S. tried to resist, but he was twice her size and restrained her arms. Defendant stopped only when the tow truck arrived. After putting some gas in the car, defendant offered to drive her home. M.S. trusted him, believing "he had already done what he had wanted to do." But, instead of taking her home, defendant drove around again, parked, and said, "I'm not going to let you go home until you fuck me the way I want you to fuck me." He forced her into the backseat, inserted his finger into her vagina, took it out, and inserted it once more into her vagina and then into her anus. Next, he inserted his penis into her vagina and told her to "start moving." When M.S. refused to cooperate, defendant pulled her hair and slapped her. M.S. was too weak and tired to escape but, with one last effort, she was able to scratch defendant's face, which evidently caused him to withdraw.

During the drive to M.S.'s house, defendant told her she was still his "homegirl" and acted as though nothing had happened. M.S. ran, crying, to the bathroom when she got home and told her mother that defendant had raped her. She had scratches and bruises on her arms and legs. They went directly to the hospital, where M.S. reported the crime to the police.

The defense contended the acts were consensual.

The jury also heard evidence that defendant had previously been convicted of assaulting another woman with the intent to commit rape. On August 11, 1991, S.B and her friends went to a dance club in Los Angeles and then arranged to meet at a nearby Denny's Restaurant. Defendant offered to drive S.B., and she accepted. After S.B. got into the car, defendant announced he first needed to stop by a friend's house. He told her to wait in the car. After defendant returned to the car, he said he needed to stop by his house to get money. She accompanied him into the apartment complex. He pulled her into a dirty apartment, where "bitch" and "fuck you" were spray-painted on the walls. He picked her up and carried her into a room with a mattress on the floor. S.B. was very much afraid and screamed, but defendant put his hand over her mouth, got on top of her, and tried to spread her legs. S.B. kicked him and tried to get him off as he struggled to remove her one-piece outfit, but he was too heavy. When she told him she was menstruating, he said he would let her go if she "jacked him off." After defendant ejaculated, he told her to wash her face and hands and said he would take her to Denny's. As they walked out of the apartment, defendant acted like a "gentleman." As soon as he opened the car door, however, S.B. grabbed her purse and keys and fled. She waited until defendant drove away and then called 911.

Defendant was convicted of forcible rape of M.S. (Pen. Code, § 261, subd. (a)(2)) and of two counts of sexual penetration by a foreign object (*id.*, § 289, subd. (a)) and sentenced as a second strike offender to a total term of 37 years in prison. In a published opinion affirming the judgment, the Court of Appeal held the trial court had erred in instructing the jury with the 1999 revised version of CALJIC No. 2.50.01 but deemed the error harmless beyond a reasonable doubt.

Defendant petitioned for review. The Attorney General also petitioned for review to challenge the Court of Appeal's holding that the instruction violated the federal Constitution. We granted both petitions.

### THE INSTRUCTION

The 1999 revised version of CALJIC No. 2.50.01, as modified in this case, provided:

"Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense other than that charged in the case.

" 'Sexual offense' means a crime under the laws of a state or of the United States that involves any of the following:

"Contact, without consent, between the genitals or anus of the defendant and any part of another person's body.

"If you find that the defendant committed a prior sexual offense in 1991 involving S[.]B[.], you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime of which he is accused.

"However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense in 1991 involving S[.]B[.], that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime. The weight and significance of the evidence, if any, are for you to decide.

"You must not consider this evidence for any other purpose."

### DISCUSSION

 Defendant offers two objections to the 1999 version of CALJIC No. 2.50.01: (1) the instruction is "likely to mislead the jury concerning the supposedly limited purpose for which they may consider the prior crimes evidence," and (2) the instruction is "likely to mislead the jury concerning . . . the prosecution's burden of proof." We reject both contentions.

The first part of the instruction permits jurors to infer the defendant has a disposition to commit sex crimes from evidence the defendant has committed other sex offenses. The inference is a reasonable one.[1] As we stated in *Falsetta*, "evidence that [the defendant] committed other sex offenses is at least circumstantially *relevant* to the issue of his disposition or propensity to commit these offenses." (*Falsetta, supra*, 21 Cal.4th at p. 915.) Prior to the enactment of Evidence Code section 1108, evidence showing the defendant's disposition was excluded " ' "not because it has no appreciable probative value, *but because it has too much*." ' " (*Falsetta*, at p. 915.) With the enactment of section 1108, however, trial courts may no longer deem

---

[1]We are not presented with, and do not decide, whether the uncharged sex acts must be similar to the charged offenses in order to support the inference. (See *Falsetta, supra*, 21 Cal.4th 903, 926 (conc. opn. of Brown, J.).)

such evidence unduly prejudicial per se, but must instead engage in a careful weighing process under Evidence Code section 352. Thus, when the evidence is admissible, it may support an inference—as the instruction provides—that the defendant is predisposed to commit sex offenses.

The instruction next informs the jurors they may—but are not required to—infer from this predisposition that the defendant was likely to commit and did commit the charged offense. This, again, is a legitimate inference. A jury may use "the evidence of prior sex crimes to find that defendant had a propensity to commit such crimes, which in turn may show that he committed the charged offenses." (*Falsetta*, *supra*, 21 Cal.4th at p. 923; *id.* at p. 920 ["evidence of a defendant's other sex offenses constitutes relevant circumstantial evidence that he committed the charged sex offenses"].)

Defendant complains that, having found the uncharged sex offense true by a preponderance of the evidence, jurors would rely on "this alone" to convict him of the charged offenses. The problem with defendant's argument is that the instruction nowhere tells the jury it may rest a conviction solely on evidence of prior offenses. Indeed, the instruction's *next sentence* says quite the opposite: "if you find by a preponderance of the evidence that the defendant committed a prior sexual offense . . . , that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime." The jury, of course, was instructed to consider the instructions "as a whole" (CALJIC No. 1.01), just as we must view a challenged portion "in the context of the instructions as a whole and the trial record" to determine " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." (*Estelle v. McGuire* (1991) 502 U.S. 62, 72 [112 S.Ct. 475, 482, 116 L.Ed.2d 385]; accord, *People v. Holt* (1997) 15 Cal.4th 619, 677 [63 Cal.Rptr.2d 782, 937 P.2d 213].) Viewed in this way, the instructions could not have been interpreted to authorize a guilty verdict based solely on proof of uncharged conduct. (*Falsetta*, *supra*, 21 Cal.4th at p. 923 [CALJIC No. 2.50.01 "incorporates" the admonition "not to convict defendant solely in reliance on the evidence that he committed prior sex offenses"].)

We find additional support for our conclusion from other instructions the jury received. For each offense, the jury was instructed that a guilty verdict requires a union or joint operation of act or conduct and the requisite intent. (CALJIC Nos. 3.30, 3.31, 10.65.) The jury was also instructed as to the elements of each charged offense and told that a conviction required proof of "each" of those elements. (CALJIC Nos. 10.00, 10.30.) No reasonable juror would believe those requirements could be satisfied solely by proof of

uncharged offenses. Even the Court of Appeal deemed the fact "that defendant committed the previous crime is not enough, by itself, to prove that he committed the charged offense" a "truism." (See also *People v. Guiton* (1993) 4 Cal.4th 1116, 1129 [17 Cal.Rptr.2d 365, 847 P.2d 45] [jury is "fully equipped" to assess a factual insufficiency of proof], adhering to *Griffin v. United States* (1991) 502 U.S. 46 [112 S.Ct. 466, 116 L.Ed.2d 371].) Or, as other courts have stated, a conviction based solely on the uncharged conduct is "a logical impossibility." (*People v. James* (2000) 81 Cal.App.4th 1343, 1354 [96 Cal.Rptr.2d 823].) Defendant fails to explain how a juror could reasonably interpret the instructions to permit a finding that defendant inserted his finger into the victim's vagina and anus against her will and then raped her—without considering any of the evidence of those offenses.

The Court of Appeal contended this illogical route to conviction was impliedly endorsed by the instruction's penultimate sentence: "The weight and significance of the evidence, if any, are for you to decide." This sentence, according to the court, "seems to suggest that the jury has the option of placing greater weight and significance on evidence of the prior sexual offenses to satisfy the higher standard needed to convict the defendant of the charged offense." It seems abundantly clear to us, however, that the instruction adequately confines the weight and significance of uncharged offenses within constitutional bounds by warning, in the immediately preceding sentence, that the uncharged offense is "not sufficient by itself to prove beyond a reasonable doubt that [defendant] committed the charged crime." Jurors would reasonably understand that the weight and significance they may accord this evidence must stay within these parameters.

The Court of Appeal's analysis also fails to note the distinction between "evidence," which was defined for the jury as "testimony of witnesses, writings, material objects, or anything presented to the senses and offered to prove the existence or non-existence of a fact," and an "inference," which was defined as "a deduction of fact that may logically and reasonably be drawn from another fact or group of facts established by the evidence." (CALJIC No. 2.00.) Under CALJIC No. 2.50.01, *evidence* of the uncharged offense may support the *inference* that defendant had a disposition to commit the charged offense which, in turn, may support the *inference* that he was likely to commit and did commit the charged offense. The Court of Appeal erred by conflating the two and construing the instruction as though it read "the weight and significance of this *inference* are for you to decide." By providing instead that the weight and significance of the *evidence* was "for you to decide," the instruction merely reiterates that the jury may, but is not required to, draw the inferences described. (Cf. *People v. Catlin* (2001) 26

Cal.4th 81, 146-147 [109 Cal.Rptr.2d 31, 26 P.3d 357] [rejecting analogous challenge to CALJIC No. 2.50]; see generally *Ulster County Court v. Allen* (1979) 442 U.S. 140, 157 [99 S.Ct. 2213, 2225, 60 L.Ed.2d 777] [a permissive inference "allows—but does not require"—the trier of fact of draw the inference].)

Defendant criticizes the instruction for failing to inform jurors that the inference they may draw from prior sexual offenses is simply one item to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime. Although defendant correctly states the law—indeed, an equivalent sentence is included in the 2002 revised version of the instruction—the constitutionality of the instruction does not depend on this sentence.[2] By telling jurors that evidence of prior offenses is insufficient to prove defendant's guilt of the charged offenses beyond a reasonable doubt, jurors necessarily understand that they must consider all the other evidence before convicting defendant. Indeed, they were instructed explicitly to "consider all of the evidence bearing upon every issue regardless of who produced it." (CALJIC No. 2.50.2.)

We likewise reject defendant's contention that the instruction "implies by way of a negative pregnant that prior sex offenses proved beyond a reasonable doubt are indeed sufficient to prove the present offense beyond a reasonable doubt." As we explained above, no juror could reasonably interpret the instructions to authorize conviction of a charged offense based solely on proof of an uncharged sexual offense. It is not possible, for example, to find each element of the charged crimes, as the jury was instructed to do before returning a guilty verdict, based solely on the 1991 offense. Nor is it possible to find a union or joint operation of act or conduct and the requisite intent for each charged crime, as the jury was also instructed to do. Hence, no reasonable jury could have been misled in this regard. (Cf. *People v. Holt, supra,* 15 Cal.4th at p. 677 [rejecting analogous challenge to CALJIC No. 2.15].)

The instruction's last point is that the prosecution has the burden to establish, by a preponderance of the evidence, that defendant committed the uncharged sex offense. Some Courts of Appeal—including the one below—have feared that a jury might interpret the instruction to permit conviction of the *charged* offenses under the preponderance-of-the evidence standard.

---

[2]In any event, omission of the cautionary sentence was not error in this case, inasmuch as defendant did not request its inclusion, and the trial court had no sua sponte duty to supply it. (*Falsetta, supra,* 21 Cal.4th at p. 924; see generally *People v. Bolin* (1998) 18 Cal.4th 297, 327-328 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

We do not find it reasonably likely a jury could interpret the instructions to authorize conviction of the charged offenses based on a lowered standard of proof. Nothing in the instructions authorized the jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination whether defendant committed a prior sexual offense in 1991 involving S.B. The instructions instead explained that, in all other respects, the People had the burden of proving defendant guilty "beyond a reasonable doubt." (CALJIC Nos. 2.61, 2.90; see CALJIC No. 10.65.) Any other reading would have rendered the reference to reasonable doubt a nullity. In addition, the jury was told that circumstantial evidence could support a finding of guilt of the charged offenses only if the proved circumstances could not be reconciled with any other rational conclusion (CALJIC No. 2.02)—which is merely another way of restating the reasonable-doubt standard. (See *People v. Carpenter* (1997) 15 Cal.4th 312, 383 [63 Cal.Rptr.2d 1, 935 P.2d 708].) The jury thus would have understood that a conviction that relied on inferences to be drawn from defendant's prior offense would have to be proved beyond a reasonable doubt.

We likewise reject the Court of Appeal's assertion that the instruction, even if correct, is too "complicated" for jurors to apply. This is not the first time jurors have been asked to apply a different standard of proof to a predicate fact or finding in a criminal trial. (E.g., CALJIC Nos. 2.50 [evidence of other crimes under Evid. Code, § 1101], 4.43 [necessity defense], 4.60 [entrapment], 4.74 [statute of limitations], 6.24 [admissibility of coconspirator's statements], 7.73 [failure to file tax returns in prior years], 12.06 [lawful possession of controlled substance].) As we do in each of those circumstances, we will presume here that jurors can grasp their duty—as stated in the instructions—to apply the preponderance-of-the-evidence standard to the preliminary fact identified in the instruction and to apply the reasonable-doubt standard for all other determinations.

Although we find no constitutional error in the 1999 version of the instruction, we nonetheless recognize it could be improved. The 2002 revision to CALJIC No. 2.50.01 deletes the sentence, "The weight and significance of the evidence, if any, are for you to decide" and inserts an additional cautionary statement: "If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime." Without passing on issues not before us—and mindful of the risk that our comments will again be misconstrued—we think the new sentence is an improvement. It provides additional guidance on the permissible use of the other-acts evidence and reminds the jury of the standard of proof for a conviction of the charged offenses.

## Disposition

The judgment of the Court of Appeal is affirmed.

George, C. J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—At issue here is the 1999 revision of CALJIC No. 2.50.01, a jury instruction on how to weigh evidence that has been introduced to show that a defendant has committed a sexual offense other than the one charged. According to the majority, this instruction "correctly states the law." (Maj. opn., *ante*, at p. 1009.) I, however, am of the view that the instruction is ambiguous and potentially confusing.

The trial court here gave this instruction: "Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense other than that charged in this case. [¶] . . . [¶] If you find that the defendant committed a prior sexual offense . . . you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to and did commit the crime of which he was accused. [¶] *However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense . . . , that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime.* The weight and significance of the evidence, if any, are for you to decide." (Italics added.) The instruction is a slightly modified version of the 1999 revision of CALJIC No. 2.50.01; none of the modifications is pertinent here.

The instruction's italicized sentence is potentially misleading. It suggests that the jury can rely on a defendant's prior sexual offense as the sole basis for convicting him of the charged offense, so long as the jury finds the prior offense true by a higher standard of proof than preponderance of the evidence. To the contrary, a prior offense, standing alone, is legally insufficient to sustain a conviction for the charged offense, as we explained in *People v. Falsetta* (1999) 21 Cal.4th 903 [89 Cal.Rptr.2d 847, 986 P.2d 182]. There, we said that when the prosecution in a case charging the defendant with a sex offense relies on evidence that the defendant committed other sexual offenses, the evidence of the other offenses "is not sufficient by itself to prove his commission of the charged offense . . . ." (*Id.* at p. 920.)

According to the majority here, the ambiguity in the instruction cannot cause jury confusion because to convict a defendant of a sexual crime based

solely on evidence of a defendant's prior sexual offense is a " 'logical impossibility.' " (Maj. opn., *ante*, at p. 1014.) Not true, as this example illustrates: A man sexually assaults a woman. She cannot identify her assailant because, for example, the assault occurs at night in an unlit room, she is blind or blindfolded, or the assailant wears a mask. The prosecution offers proof that the defendant, who is charged with the offense, has committed an *uncharged* sex crime, but it presents no evidence that the jury finds credible that he committed the *charged* offense. If given the instruction at issue here, a jury hearing such evidence might well conclude—although improperly so—that it could convict the defendant based solely on the uncharged crime, so long as that offense was proven beyond a reasonable doubt. Thus, contrary to the majority's view, a conviction of a sexual offense based solely on proof of a defendant's prior sexual offense is not a "logical impossibility."

In this case, however, there is no reasonable likelihood that the ambiguous language in CALJIC No. 2.50.01 misled the jury. (See *People v. Clair* (1992) 2 Cal.4th 629, 662-663 [7 Cal.Rptr.2d 564, 828 P.2d 705] ["reasonable likelihood" standard applies when reviewing claims of ambiguous jury instructions].) The prosecution relied primarily on the testimony of the victim, M.S., rather than on evidence that defendant had committed a prior sex offense. Defendant did not deny having sexual relations with M.S., claiming only that she consented. The prosecutor never suggested that the jury could find defendant guilty based solely on his prior offense if it found beyond a reasonable doubt that he committed that offense. On these facts, the ambiguous language in CALJIC No. 2.50.01 could not have prejudiced defendant.