Filed 6/1/15  P. v. Turcios CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JORGE TURCIOS,<br><br>　　　　　　Defendant and Appellant. | B256452<br><br>(Los Angeles County<br> Super. Ct. No. BA414299) |

APPEAL from the judgment of the Superior Court of Los Angeles County. William N. Sterling, Judge.  Affirmed.

Law Offices of Andy Miri and Andy Miri for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Jorge Turcios was convicted by jury of one count of inflicting corporal injury on a cohabitant, and sentenced to a four-year prison term. He contends the trial court erred by (1) erroneously admitting a 911 call related to a prior uncharged incident of domestic violence; (2) instructing with a prejudicially misleading burden of proof instruction regarding prior acts of domestic violence; (3) failing to instruct sua sponte with "Alternative B" of CALCRIM No. 121; and (4) imposing the high term based on facts related to the elements of the substantive charge.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2013, Maria C. was defendant's girlfriend. They lived together and she was five months pregnant with their child.

On July 31, defendant and Maria got into a fight. Defendant accused Maria of having an affair and that she was carrying someone else's child. Defendant grabbed Maria and slammed her head into the bathroom door. Maria got her cell phone to call the police and defendant snatched the phone away from her. He grabbed her hair and threw her to the ground. Defendant then put his hand around her throat as if to choke her, kicked her in the stomach, and told her "I'm going to take out that kid."

Defendant left Maria in the apartment and went outside to sit on the stairs. Maria did not have her own car, and she was without her cell phone because defendant had taken it from her. She went outside and told defendant she needed a cab to go to her mother's house. Defendant drove Maria to her mother's house. Maria had a headache and her lower back hurt. She told her mother, Brenda M., what happened. Brenda called 911.

Los Angeles Police Department Officer Angel Alfaro reported to Brenda's home in response to the 911 call. Officer Alfaro, who is fluent in Spanish, spoke with Maria about the incident.

Defendant was charged with one count of inflicting corporal injury on a cohabitant. (Pen. Code, § 273.5, subd. (a).) Defendant pled not guilty.

2

In April 2014, the case proceeded to a jury trial. The prosecution filed a motion seeking admission of prior acts of domestic violence by defendant pursuant to Evidence Code section 1109, subdivision (a)(1). The prosecution sought to introduce two prior incidents between defendant and Maria, one in July 2012 and one in October 2012.

Defendant raised a number of objections, but primarily argued the prejudicial nature of the October 2012 incident because of the claim defendant had displayed a gun and threatened Maria with it, particularly the 911 call in which the witness who made the call stated several times that defendant had a gun in his hand. The court held an Evidence Code section 402 hearing. Both Maria and her mother testified. Following lengthy argument by counsel, the court granted the prosecution motion. The court reasoned in part that the allegations concerning the present offense, specifically the kicking of a pregnant woman in the stomach, were particularly egregious, and the use of the gun in the prior incident was therefore not likely to be unfairly inflammatory.

The court preinstructed the jury, including with CALCRIM No. 121, Alternative A, regarding the receipt and consideration of foreign language testimony and the duty to adhere to the English language translations.

Maria testified under subpoena and with the assistance of a Spanish language interpreter. She said she did not want to testify. She claimed to not recall many of the details of the fight on July 31, 2013.

Maria testified she also did not recall most of what happened during the July 2012 and October 2012 prior incidents. She admitted she went to a police station in July 2012 and reported a fight with defendant that occurred at a friend's house party, but she could not recall what happened because she had been drinking. She said she could not recall reporting that defendant grabbed her throat and punched her in the face. She admitted the police took photographs of her, but claimed she did not see any injuries in the photographs that were shown to her.

As for the October 2012 incident, Maria admitted she and defendant had been at a nightclub and got into a fight. She said they went outside but the fight did not escalate. She said she did not call police or talk to 911, but admitted it was her voice on the 911

3

call played for the jury. She said she had been drinking that night as well and did not have a good memory of it but defendant did not have a gun. Maria said her mother picked her up from the nightclub after defendant left.

Brenda also testified with the aid of an interpreter, and claimed to not remember much of her prior statements. She recalled calling 911 on July 31 and identified her voice on the audio recording of the 911 call played for the jury. She said Maria came to her house crying, complaining of having had an argument with defendant. Brenda saw some scratches on her daughter. Brenda admitted she reported that Maria had said defendant had kicked her in the stomach while telling her he was going to "take out the baby." Brenda said she took Maria to the hospital later that evening. She also recalled picking up Maria from a nightclub in October 2012 after another fight between her daughter and defendant.

Officer Alfaro testified to the events of July 31, 2013. He explained that he spoke fluent Spanish and was therefore able to interview Maria in Spanish. She told him that around 6:00 that evening, defendant had assaulted her at their apartment. Defendant grabbed her head and shoved it into the bathroom door. He took her cell phone away when she tried to call the police. He grabbed her by the hair and threw her to the ground, and then put a hand on her throat and kicked her in the stomach. Defendant told Maria he was "going to take the kid out." Officer Alfaro said Maria told him that after that, defendant left the apartment, and she found him sitting outside. She told him that she needed to go to her mother's house and defendant drove her there.

Officer Alfaro explained that Maria cried throughout the interview and appeared to be afraid, not angry. He observed injuries on Maria, including a bump on the right side of her head, a bruise on her chest and an abrasion at least eight inches long on her torso. Officer Alfaro took pictures of the injuries. Officer Alfaro also testified that he checked defendant for injuries and did not find any.

Dr. Francis Chang testified to examining Maria in the early morning hours of August 1, 2013, at Good Samaritan Hospital. She had a contusion on the right side of her head, an abrasion along her right torso, a contusion on her chest and some abrasions on

4

her face. When Dr. Chang touched Maria's rib cage, she expressed pain and discomfort on the right side. Maria's injuries appeared "fresh" or recent. She told Dr. Chang she had been assaulted by the man who was the father of her baby.

The jury found defendant guilty as charged.

At the sentencing hearing, defendant requested probation, arguing there were mitigating factors supporting leniency, including that he had no prior felony convictions. The court allowed lengthy argument by counsel. The court sentenced defendant to the high term of four years, explaining that the egregious and aggravated nature of the crime, including the kicking of a pregnant woman in the stomach, warranted the high term. The court awarded defendant total presentence custody credits of 44 days and imposed various fees.

This appeal followed.

## DISCUSSION

### 1.    The Admission of the Prior Act of Domestic Violence

Defendant contends the October 2012 prior uncharged act of domestic violence, and in particular the 911 call regarding that incident, was highly inflammatory and the court abused its discretion in refusing to exclude it under Evidence Code section 352. Defendant argues the evidence of gun use by defendant was weak, was denied by the victim at trial, and served only to prejudice the jury against defendant. We are not persuaded.

Evidence of prior uncharged acts of domestic violence are admissible under Evidence Code section 1109, subdivision (a)(1) which provides: "Except as provided in subdivision (e) or (f), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."

A trial court is vested with broad discretion in determining the admissibility of evidence under Evidence Code section 352. (*People v. Lewis* (2001) 26 Cal.4th 334, 374-375.) "A trial court's exercise of discretion in admitting or excluding evidence is

5

reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

The record reflects the court carefully and thoroughly considered the facts of the October 2012 incident, particularly the aspect of the incident involving defendant's use of a gun in threatening Maria and the statements on the 911 call referring to that. The court reasoned that the charged offense concerned serious conduct by defendant, including the kicking of a pregnant woman in the stomach, and therefore the jury was unlikely to be unfairly prejudiced against defendant by hearing about a prior incident in which he argued with Maria outside a nightclub, gun in hand, threatened her, and then ran off when another witness called 911 to report the incident. The court also noted that the nature of the prior incident, where defendant allowed an argument to escalate to threats of violence, and physical aggression, was plainly probative of defendant's propensity to act violently with the victim.

We find no fault in this reasoning. "The word 'prejudicial' is not synonymous with 'damaging.' [Citation.] Rather, evidence is unduly prejudicial under section 352 only if it ' " 'uniquely tends to evoke an emotional bias against the defendant as an individual and . . . has very little effect on the issues' " ' [citation], or if it invites the jury to prejudge ' " 'a person or cause on the basis of extraneous factors' " ' [citation]." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 534.) The trial court reasonably evaluated whether the probative value of the prior incident was outweighed by concerns of undue prejudice, confusion or consumption of time and determined the prior incident was properly admitted under Evidence Code section 1109. Defendant has not shown any abuse of discretion by the court in so ruling.

## 2.     CALCRIM No. 852

Defendant contends CALCRIM No. 852 prejudicially confused the jury as to the relevant burden of proof.[1]  CALCRIM No. 852 instructs the jury it can consider prior uncharged acts of domestic violence if the prosecution establishes by a preponderance of the evidence that the prior acts occurred.  Defendant urges us to find the instruction infirm because of the substantial likelihood of confusing the jury as to its obligation to convict defendant on the charged offense under a reasonable doubt standard.  Not only was this argument forfeited by defendant, it is without merit.

Defendant forfeited this argument by failing to object below.  (*People v. Lang* (1989) 49 Cal.3d 991, 1024 [a defendant may not complain on appeal that an instruction correct in law was too general, incomplete or misleading unless he or she has requested appropriate clarifying or amplifying language].)  In any event, the argument has already been rejected by numerous courts and defendant has presented no persuasive argument for departing from those well-reasoned decisions.

In *People v. Reliford* (2003) 29 Cal.4th 1007 (*Reliford*), the Supreme Court considered the same argument with respect to CALJIC No. 2.50.01 regarding the consideration of prior sex crimes evidence.  The court rejected the argument that the instruction's inclusion of language, similar to CALCRIM No. 852, regarding the preponderance standard was "too 'complicated' for jurors" to understand, explaining "[t]his is not the first time jurors have been asked to apply a different standard of proof to

---

[1]     The instruction reads in relevant part:  "The People presented evidence that the defendant committed domestic violence that was not charged in this case, specifically at a party on July 15, 2012, and at El Tiburon on October 14, 2012.  [¶] . . . [¶]  You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged domestic violence. . . .  [¶]  If the People have not met this burden of proof, you must disregard this evidence entirely.  [¶] If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence. . . .  It is not sufficient by itself to prove that the defendant is guilty of the crimes at issue here.  The People must still prove any charge beyond a reasonable doubt.  [¶]  Do not consider this evidence for any other purpose."

7

a predicate fact or finding in a criminal trial." (*Reliford,* at p. 1016.) *Reliford*'s reasoning has been applied to CALCRIM No. 852. (See, e.g., *People v. Johnson* (2008) 164 Cal.App.4th 731, 739-740.)

### 3. CALCRIM No. 121

Defendant contends the court had a sua sponte duty to instruct the jury with "Alternative B" of CALCRIM No. 121 regarding foreign language recordings and that the failure to do so was highly prejudicial. Defendant forfeited this argument by failing to request the instruction. On the merits, defendant fails to cite any authority supporting his contention the court had a sua sponte duty to give this instruction.

CALCRIM No. 121, titled "Duty to Abide by Translation Provided in Court" sets forth two alternate pretrial admonishments. The court preinstructed with Alternative A as follows: "Some testimony may be given in a language other than English. An interpreter will provide a translation to you at the time that the testimony is given. You must rely on the translation provided by the interpreter, even if you understand the language spoken by the witness. Do not retranslate testimony for other jurors. If you believe the court interpreter translated testimony incorrectly, let me know immediately by writing a note and giving it to the clerk or bailiff."

Defendant did not request the court to instruct the jury with Alternative B of CALCRIM No. 121 which essentially mirrors the Alternative A language given by the court, but relates to foreign language recordings, instead of foreign language testimony. The Bench Notes for CALCRIM No. 121 provide, in relevant part, that the "committee recommends giving Alternative A of this instruction whenever testimony will be received with the assistance of an interpreter, though no case has held that the court has a sua sponte duty to give the instruction. The instruction may be given at the beginning of the case, when the person requiring translation testifies, or both, at the court's discretion. If the jury may hear a recording that is at least partially in a foreign language, the court may give Alternative B with the appropriate bracketed language, as needed. [¶] If the court chooses, the instruction may also be modified and given again at the end of the case, with all other instructions." (CALCRIM No. 121 (fall 2014) p. 25.)

Defendant has not cited, nor have we found, any case holding the court has a sua sponte duty to instruct with Alternative B of CALCRIM No. 121. We can think of no good reason to find any such duty.

## 4. The Imposition of the High Term

Defendant argues the court's imposition of the high term was error because the court improperly relied only on elements of the substantive charge as aggravating sentencing factors. We do not agree.

Defense counsel argued at length why he felt imposition of the high term was not warranted, but did not expressly state an objection on the grounds the court was improperly using the elements of the crime to aggravate the offense. The contention on appeal is therefore properly deemed forfeited. (*People v. Scott* (1994) 9 Cal.4th 331, 353.) In any event, defendant's argument lacks merit.

A single aggravating factor is sufficient to support a court's decision to impose the upper term. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 848; *People v. Osband* (1996) 13 Cal.4th 622, 730.) A sentencing factor that is an element of the charged offense may not be used as the factor in aggravation, but a sentencing factor is only considered an element of the offense "if the crime as defined by statute cannot be accomplished without performance of the acts which constitute such factor." (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1262.)

During discussions with counsel, the court repeatedly noted its concern about the egregious nature of the offense, specifically the kicking of a pregnant woman in the stomach. The prosecutor argued for the high term, noting the violent nature of the assault, the vulnerability of the pregnant victim, and the fact defendant was on probation for a similar charge at the time of the offense. The court explained the aggravating circumstances articulated by the prosecutor outweighed any mitigating factors and justified the imposition of the high term. The crime of inflicting corporal injury on a cohabitant can be accomplished even though the victim is not pregnant and particularly vulnerable, and with a lesser degree of violence than slamming the victim's head into a door or kicking her in the stomach while pregnant. The record does not support

9

defendant's contention that the court improperly relied on the elements of the offense to impose the high term.

## DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.


WE CONCUR:


BIGELOW, P. J.


RUBIN, J.