Filed 10/6/25  P. v. Navarro CA6
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ISRAEL MENDOZA NAVARRO,<br><br>    Defendant and Appellant. | H050626<br>(Santa Clara County<br>Super. Ct. No. C1910887) |

In 2022, Israel Mendoza Navarro was convicted of rape, sodomy, and oral copulation by force, and he was sentenced to 250 years to life in prison.  On appeal, Navarro challenges his convictions based on an instruction concerning uncharged crimes.  He also challenges his sentence based on denial of a motion to dismiss a prior strike conviction, and he objects that the abstract of judgment mistakenly includes fines, fees, and assessments that the trial court stayed.

As explained below, we conclude that there was no reversible error at either trial or sentencing.  However, the People concede that the abstract of judgment is erroneous, and we accept that concession.  Accordingly, we affirm the judgment and order the abstract corrected.

## I. BACKGROUND

### A. M. Doe

In 2012, M. Doe rented a room in her apartment to Navarro. M. Doe also had an occasional intimate relationship with Navarro. M. Doe eventually asked Navarro to leave because he could not pay rent, but she continued to have intimate relations with him two to three times a week.

One day in April 2012, around 3:00 a.m. in the morning, Navarro picked up M. Doe, but rather than going to his mother's house where he was staying, Navarro drove M. Doe to a deserted area next to an elementary school and a church. He demanded sex, but M. Doe refused. She tried to leave the car, but Navarro grabbed her and slapped her on the face. After taking off M. Doe's jacket and pulling down her pants, he fingered her before penetrating, sodomizing, and forcing her to orally copulate him. In so doing, Navarro punched M. Doe all over her body.

Afterwards, M. Doe went to the hospital, where staff found anal and vaginal injuries and took photos of bruises on her arms, legs, chest, and stomach. Navarro appears to have been charged with rape, sodomy, and oral copulation by force or fear, but he pleaded guilty to forcible oral copulation only.

### B. J. Doe

After serving three years in prison, Navarro was paroled, received psychological counseling for severe childhood abuse, and entered college. He received an associate's degree and began pursuing a bachelor's degree. In 2017, Navarro met and befriended J. Doe, a younger student at the community college Navarro attended who worked as Navarro's peer mentor in a program to help disadvantaged students. By May 2019, they had known each other for two years.

One day that month, J. Doe and Navarro arranged to get food, smoke marijuana, and watch a movie. When Navarro arrived at J. Doe's house to pick her up, he was

2

aggressive and angry. Unlike he had done before, Navarro began to make sexual remarks and directed J. Doe to orally copulate him, but she refused.

Navarro then drove J. Doe to an outdoor movie theater, where they smoked marijuana. Afterwards, Navarro began pushing J. Doe's hands towards and then onto his penis. Although J. Doe told Navarro to stop, he did not; instead, he pushed her head down and forced her to orally copulate him.

Navarro subsequently moved the car, and J. Doe exited but left her phone and purse. After Navarro threatened to leave, J. Doe returned to the car, and Navarro told her to take off her pants, which she did. Navarro, who was much larger than J. Doe, pinned her down in the back seat, pulled down her underwear, and, despite her pleas to stop, penetrated her.

Later, Navarro drove off, stopping at a gas station where he yelled at J. Doe again. He then parked in the deserted lot of an auto wrecker. There, after purporting to help J. Doe with a panic attack, Navarro grabbed her and again penetrated her despite repeated requests to stop.

Navarro next drove to the parking lot of a church. There, he again penetrated her despite repeated requests to stop.

Finally, Navarro drove to a park near J. Doe's home and once again penetrated and sodomized her. After driving closer to J. Doe's home, Navarro told her to get out of his car and that she had "wasted his time."

C. **The Proceedings Below**

Although J. Doe did not tell her family what happened, she took pictures of the bruises she suffered to her legs and chest near her collar bone. Soon after, J. Doe also told her best friend (who, unbeknownst to J. Doe, had a sexual relationship with Navarro), the director of the peer mentor program, and another coworker. And five days after the incidents, she reported them to campus police. A state parole agent obtained

3

GPS data from Navarro's ankle monitor, which was required as a condition for his parole on the offense against M. Doe. The data showed that on the night of the incidents, Navarro went from J. Doe's home to a drive-in movie theatre, a gas station, an auto wrecker, a church, and back to the home.

### 1. *The Charges*

On April 21, 2022, the Santa Clara County District Attorney filed a first amended information charging Navarro with six offenses: forcible oral copulation in violation of Penal Code section 287, subdivision (c)(2)(A); forcible sodomy in violation of Penal Code section 286, subdivision (c)(2)(A); and four counts of forcible rape in violation of Penal Code section 261, subdivision (a)(2). (Subsequent undesignated statutory references are to the Penal Code.) The information alleged a prior strike based on Navarro's 2012 conviction for forcible oral copulation, and the same conviction provided the basis for allegations of a prior serious felony conviction, a prior prison term, and a previous conviction for an offense requiring sex offender registration.

### 2. *The Trial*

At trial, over the course of four days J. Doe testified concerning Navarro's repeated sexual assaults on her in May 2019. During that testimony, the prosecution admitted into evidence the photographs that J. Doe took the night of the incidents of the bruises she suffered. J. Doe also testified that at one point that night, Navarro told her "there was a girl that he raped before, and when girls find out that he's done that . . . they ask him to do it for them." M. Doe also testified concerning Navarro's 2012 assault on her.

Navarro took the stand in his own defense. He claimed he had consensual sex with J. Doe, starting at the drive-in theater and proceeding to other locations for more space and privacy. Navarro also claimed J. Doe confronted him the next day about his sexual relationship with her best friend.

4

Based on CALCRIM No. 1191A, the trial court instructed the jury on evaluating and using evidence of the 2012 crimes against M. Doe, which were not charged in this case.[*] The jury convicted Navarro on all counts. Navarro admitted the allegations concerning his 2012 conviction and prior prison term.

### 3. *Sentencing*

At sentencing, Navarro moved to dismiss the strike prior enhancement for his 2012 conviction. In so doing, Navarro pointed to his childhood, including the murder of his father when he was a young child, the physical and sexual abuse he suffered at the hands of his stepfather, and his resulting substance abuse. The motion also noted Navarro's academic accomplishments on parole from the 2012 conviction.

---

[*] The instruction stated in full: "The People presented evidence that the defendant committed the crime of Penal Code section 288a(c)(2)(A) oral copulation by force or fear and the conduct prohibited by Penal Code section 261(a)(2) rape by force or fear and Penal Code section 286(c)(2)(A) sodomy by force or fear that were not charged in this case against M. Doe. These crimes are defined for you in these instructions. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offense. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden of proof, you must disregard this evidence entirely. [¶] If you decide that the defendant committed any of the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit the crimes of Penal Code section 288a(c)(2)(A) oral copulation by force or fear, Penal Code section 261(a)(2) rape by force or fear, and Penal Code section 286(c)(2)(A) sodomy by force or fear, as charged here. If you conclude that the defendant committed any of the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the crimes of Penal Code section 288a(c)(2)(A) oral copulation by force or fear, Penal Code section 261(a)(2) rape by force or fear, and Penal Code section 286(c)(2)(A) sodomy by force or fear. The People must still prove each charge beyond a reasonable doubt."

The trial court acknowledged that Navarro's upbringing was "very tragic," and it found "even more tragic" that Navarro lapsed back into alcohol and drug abuse after making "great strides" in turning his life around on parole. However, the court decided that dismissing the strike prior allegation was not in the interests of justice. In so doing, the trial court noted that Navarro committed the assaults against J. Doe while out on parole for a similar offense against M. Doe, that the assaults against J. Doe showed increasingly serious criminal conduct "given the number of different incidents on the same night," and that Navarro did not accept responsibility for his conduct. Nevertheless, the trial court struck the prior serious felony enhancement and prior prison term enhancements.

The trial court sentenced Navarro to a total term of 250 years to life. On each count of conviction, the court imposed a sentence of 25 years to life, doubled under the "Three Strikes" law, for a term of 50 year to life. (§ 667, subd. (e)(1).) Accordingly, the trial court sentenced Navarro to terms of 50 years on each count, all consecutive except for one concurrent count of forcible rape.

The court also imposed a $500 fine as well as penalties and assessments under section 290.3. However, at the end of the sentencing hearing, Navarro moved to stay the fines and fees under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), explaining that he had been in custody for more than three years. The trial court granted the motion and stayed the imposed sums.

Navarro filed a timely notice of appeal.

## II. DISCUSSION

### A. The Uncharged Crimes Instruction

Navarro challenges his convictions on the ground that the trial court erred in instructing the jury on uncharged crimes. Specifically, he argues the instruction given the jury to use the preponderance-of-the evidence standard on uncharged crimes likely

6

confused the jury and effectively lowered the prosecution's burden of proof on the charged crimes. Although Navarro did not object to the uncharged crimes instruction at trial, he asserts ineffective assistance of counsel based on the failure to do so; in light of that assertion, we exercise our discretion to reach the merits of Navarro's challenge. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 (*Williams*).) Reviewing the instruction de novo (*People v. Mitchell* (2019) 7 Cal.5th 561, 597), we conclude the instruction was proper under the Supreme Court's decision in *People v. Reliford* (2003) 29 Cal.4th 1007 (*Reliford*), which approved a predecessor of the instruction used by the trial court.

In *Reliford*, *supra*, 29 Cal.4th 1007, the trial court instructed the jury on uncharged misconduct using a revised version of CALJIC No. 2.50.01. This instruction informed the jury that, if it found that the defendant committed a prior sexual offense, it could "infer the defendant has a disposition to commit sex crimes from evidence the defendant has committed other sex offenses." (*Reliford, supra,* at p. 1012.) The instruction also told the jury to apply the preponderance-of-the-evidence standard to uncharged misconduct and that, if proved, such misconduct was not sufficient to prove the charged offense beyond a reasonable doubt: "[I]f you find by a preponderance of the evidence that the defendant committed [the] prior sexual offense . . . , that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime.' " (*Ibid*.) The defendant objected that this instruction was likely to mislead the jury concerning the prosecution's burden of proof on the charged misconduct. (*Ibid.*) The California Supreme Court disagreed. (*Id*. at p. 1016 ["We do not find it reasonably likely a jury could interpret the instructions to authorize conviction of the charged offenses based on a lowered standard of proof."].)

In reaching this conclusion, the Supreme Court noted that in criminal trials jurors are frequently asked to apply a different standard of proof to predicate facts and findings.

7

(*Reliford*, *supra*, 29 Cal.4th at p. 1016.) In addition, although the Court recognized that the uncharged misconduct instruction "could be improved," it identified several reasons why the instruction was unlikely to create confusion over the ultimate standard of proof: (1) the instruction expressly referenced the reasonable doubt standard; (2) "[n]othing in the instructions authorized the jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination whether defendant committed a prior sexual offense"; and (3) other instructions given the jury explained that the People had the burden of proving the defendant's guilt beyond a reasonable doubt. (*Ibid*.) Accordingly, the Supreme Court concluded that the jury "would have understood that a conviction that relied on inferences to be drawn from defendant's prior offense would have to be proved beyond a reasonable doubt." (*Ibid*.)

The instruction given in this case, which was based on CALCRIM No. 1191A, leads to this conclusion even more clearly. First, as in *Reliford*, the instruction authorized the jury to use the preponderance-of-the-evidence standard only in making the preliminary determination that the defendant engaged in uncharged misconduct. Second, other instructions—on evidence of charged sex offenses, specific offenses, the corpus delicti rule, circumstantial evidence, and reasonable doubt itself—admonished the jury that the charged offenses had to be proved beyond a reasonable doubt. Third, like the instruction in *Reliford*, the uncharged misconduct instruction in this case expressly referenced the reasonable doubt standard. Indeed, the instruction here reminded the jury to apply the beyond-a-reasonable-doubt standard to the charged misconduct much more clearly: Rather than just referencing reasonable doubt in noting that inferences drawn from prior offenses are not sufficient to prove guilt, the instruction here separately discussed the beyond-a-reasonable-doubt standard, informing the jury in clear and unequivocal terms that "[t]he People must still prove must prove each charge beyond a reasonable doubt." Consequently, even more clearly than the instruction upheld in

8

*Reliford*, the instruction in this case informed the jury that, even if it found prior uncharged misconduct, it was required to find the charged crimes beyond a reasonable doubt.

Navarro does not explain why it is likely a jury would have misunderstood this instruction. Instead, he relies on Justice Corrigan's concurrence and dissent in *People v. Villatoro* (2012) 54 Cal.4th 1152, 1169 (*Villatoro*). This reliance is misplaced. In *Villatoro*, the trial court gave a modified version of CALCRIM No. 1191A allowing the jury to use charged sex offenses to prove propensity to commit the other charged offenses. (*Villatoro*, *supra*, at p. 1167.) However, this modified instruction informed the jury that, even if it used a charged offense to infer propensity in order to prove another offense, the other offense must be proved beyond a reasonable doubt. (*Ibid*.) In her opinion, Justice Corrigan argued that such an instruction might cause risk of confusion if the prosecution "presented evidence of [both charged and] *uncharged* misconduct." (*Id*. at p. 1181, Corrigan, J. conc. & dis. opn.) In that situation, Justice Corrigan reasoned, the instruction would create confusion because the jury would necessarily be instructed to apply different standards (preponderance of the evidence and beyond a reasonable doubt) to similar conduct. On the one hand, "[r]equiring the jury to apply two standards of proof to evidence of the *same crime* would inevitably lead to confusion and could potentially erode the presumption of innocence." (*Ibid.*) On the other hand, if the jury were instructed to apply the reasonable doubt standard only to charged misconduct used to prove other misconduct, "the instructions would require the jury to juggle two separate standards of proof for the same type of evidence." (*Ibid.*)

This case does not implicate the concerns created by the scenario that Justice Corrigan posited for the simple reason that the scenario is not present here. In this case, the prosecution did not attempt to prove propensity using both charged and uncharged misconduct. It sought to prove propensity based solely on uncharged conduct. As a

9

consequence, the jury was instructed to use only one standard of proof for propensity evidence.

Accordingly, we conclude that the instruction on uncharged misconduct given the jury in this case was proper under *Reliford* and that the convictions in this case should be affirmed.

**B**. **The Motion to Strike the Allegation of the 2012 Conviction**

Navarro also contends that his sentences were improperly increased by applying the Three Strikes law. The expressly stated purpose of the law is "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of one or more serious or violent felony offenses." (§ 667, subd. (b).) Accordingly, the Three Strikes law provides, among other things, that if a defendant is convicted of a felony and has "one prior serious or violent felony conviction," the sentence for that felony is doubled. (§ 667, subd. (e)(1).) Although Navarro concedes that his 2012 conviction was a prior strike offense, he moved under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) to dismiss the allegations concerning the conviction, but the trial court denied the motion. On appeal, Navarro contends the trial court abused its discretion by declining to dismiss the allegation concerning the 2012 conviction under *Romero* or, alternatively, by failing to consider the factors laid out in section 1385, subdivision (c). As explained below, we disagree on both points.

### 1. *Romero*

Trial court decisions whether to dismiss allegations of a prior strike offense are reviewed for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).) We conclude that trial court did not abuse its discretion in denying Navarro's *Romero* motion.

10

As the Supreme Court recognized in *Romero*, trial courts have discretion under section 1385, subdivision (a) to strike allegation of prior felony convictions in "furtherance of justice." (§ 1385, subd. (a); see *Romero*, *supra*, 13 Cal.4th at pp. 518-530.) This standard " 'requires consideration both of the constitutional rights of the defendant, and the interests of society represented by the People.' " (*Romero*, *supra*, 13 Cal.4th at p. 530, italics omitted.) In making this determination, "preponderant weight must be accorded to factors intrinsic to the scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects." (*Williams*, *supra*, 17 Cal.4th at p. 161.) Courts also may consider the recency of the prior conviction and its similarity to the current conviction. (*Id.* at p. 163.) However, "no weight whatsoever may be given to factors extrinsic to the [Three Strikes] scheme, such as the mere desire to ease court congestion." (*Id.* at p. 161.) " '[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law,' " a trial court's ruling must be affirmed even if the reviewing court might have balanced the factors differently in the first instance. (*Carmony*, *supra*, 33 Cal.4th at p. 373.)

Here, the trial court considered appropriate factors and reasonably concluded that dismissing the allegation concerning the 2012 conviction would not be in furtherance of justice. Examining "the nature and circumstances of the defendant's present felonies" and his prior one (*Williams*, *supra*, 17 Cal.4th at p. 161), the court reasoned that "the present offense is violent and serious" and that Navarro was a recidivist who committed sex offenses while on parole from a conviction for a prior sex offense. In addition, Navarro's current offenses were not only similar to the offense for which he was convicted in 2012; "given the number of different incidents on the same night," his offenses also showed increasingly serious criminal conduct. Consequently, the trial court

11

had ample reason for concluding that Navarro was a recidivist who was likely to commit significant crimes again in the future and, thus, posed exactly the sort of danger to society for which the Three Strikes law was designed.

In reaching this conclusion, the trial court considered the mitigating circumstances presented by Navarro. Navarro presented evidence that he suffered from addiction and that he experienced a violent, abusive childhood. The trial court recognized that the abuse that Navarro suffered was "very tragic," and it found his lapse back into addiction after making strides turning his life around "even more tragic." However, the court concluded that these considerations did not negate those weighing against dismissing the strike allegation.

As the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the Three Strikes law, we conclude that there was no abuse of discretion in the denial of Navarro's *Romero* motion.

### 2. *The Enhancement Factors*

Navarro also argues that the trial court abused its discretion by failing to apply the factors enumerated in subdivision (c) of section 1385 in considering whether to dismiss the prior strike allegations against him. Reviewing this question of statutory interpretation de novo (*People v. Tirado* (2022) 12 Cal.5th 688, 694), we conclude this subdivision does not apply to prior strike allegations under the Three Strikes law.

Senate Bill No. 81 (2021-2022 Reg. Sess.) amended section 1385 to specify the factors to be considered in deciding whether to strike sentence enhancements. (*People v. v. Sek* (2022) 74 Cal.App.5th 657, 674.) This legislation added subdivision (c), which lists mitigating circumstances a trial court must consider in deciding whether to "dismiss an *enhancement*" and ascribes the weight to be afforded those circumstances. (§ 1385, subd. (c), italics added.) As the Third District noted in *People v. Burke* (2023) 89 Cal.App.5th 237, "[t]he term 'enhancement' has a well-established technical meaning in

12

California law," that is, " ' "an additional term of imprisonment added to the base term." ' " (*Id.* at p. 243.) By contrast, it is well-established the Three Strikes law is *not* an enhancement; "it is an alternative sentencing scheme for the current offense." (*Ibid.*) As the Legislature presumably was aware of these established understandings, *Burke* concluded that, in instructing courts to use the mitigating factors in subdivision (c) of section 1385 to the dismissal of an "enhancement," the Legislature did not intend for those factors to be used in applying the Three Strikes law. (*Id.* at pp. 243-244.)

Subsequent Court of Appeal decisions addressing this issue have agreed with *Burke* that the mitigating circumstances in subdivision (c) of section 1385 do not apply to alternative sentencing schemes such as the Three Strikes law. (See *People v. McDowell* (2024) 99 Cal.App.5th 1147, 1150 ["[S]ection 236.1(c)(2) provides an alternative punishment for the underlying offense and is therefore not an enhancement."]; *People v. Olay* (2023) 98 Cal.App.5th 60, 67 ["If the Legislature had wanted section 1385, subdivision (c) to apply to prior strikes as well as to enhancements as legally defined, it would have said so."]; *People v. Tilley* (2023) 92 Cal.App.5th 772, 776 fn. 2 ["A prior strike conviction is not an enhancement but part of an alternative sentencing scheme."].)

Navarro does not offer any persuasive reason to depart from this precedent. Indeed, he acknowledges that appellate decisions following *Burke* have agreed that section 1385, subdivision (c) deals with enhancements, not the Three Strikes law or other alternative sentencing schemes. Moreover, noting that the California Supreme Court has yet to address the question (see *People v. Walker* (2024) 16 Cal.5th 1024, 1029, fn. 2), Navarro states that he "raises [the issue] here to preserve it for further review."

In so doing, Navarro does not suggest any alternative definition of "enhancement" that would encompass motions to dismiss prior strike allegations. He merely notes that, in a footnote, *Burke* asserted that "much of the legislative history is inconsistent with this plain language and suggests that the term enhancement includes the Three Strikes law."

13

(*Burke*, *supra*, at p. 243, fn. 3.)  However, this inconsistency is minor.  The legislative history contains only a few relevant references concerning the Three Strikes law: namely, quotations from two publications referring to the Three Strikes law as an enhancement. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 81 (2021-2022 Reg. Sess.) as amended Feb. 8, 2021, p. 3 [quoting Public Policy Institute of California]; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 81 (2021-2022 Reg. Sess.) as amended Apr. 27, 2021, p. 3 [quoting Committee on the Revision of the Penal Code].)  However, one of those reports also expressly recognizes the distinction between enhancements and alternative penalty schemes, which "include the Three Strikes Law."  (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 81 (2021-2022 Reg. Sess.) as amended Apr. 27, 2021, p. 5.)  Moreover, we are unaware of any indication in the legislative history that the Legislature intended to apply the new subdivision (c) of section 1385 to the Three Strikes law.  Consequently, we agree with *Burke* that the legislative history does not warrant any departure from the established distinction between enhancements and alternative sentencing schemes such as the Three Strikes law.  (*Burke*, *supra*, at p. 243, fn. 3.)

We therefore conclude that the trial court did not abuse its discretion in denying Navarro's motion to strike the allegations of his prior strike offense.

## C.  The Abstract of Judgment

During the sentencing hearing, the trial court imposed a $500 fine as well as penalties under Penal Code section 290.3.  However, at the end of the hearing, defense counsel asked that these fines and penalties be stayed pursuant to *Dueñas*, *supra*, 30 Cal.App.5th 1157 because Navarro lacks the ability to pay the fines, and the trial court granted the request.  Nevertheless, the abstract of judgment included both sums without noting they were stayed.  Navarro therefore asks that the abstract of judgment be corrected.  The People concede the abstract is erroneous and should be corrected, and we

14

accept that concession. "[T]he abstract of judgment is not itself the judgment of conviction, and cannot prevail over the court's oral pronouncement of judgment to the extent the two conflict." (*People v. Delgado* (2008) 43 Cal.4th 1059, 1070, superseded by statute on unrelated grounds as stated in *People v. Frahs* (2018) 27 Cal.App.5th 784, 795.) Accordingly, we will order the abstract of judgment amended and corrected.

### III. DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment to reflect that the $500 fine and $1,550 in penalties and assessments were stayed. A certified copy of the corrected abstract of judgment shall be forwarded to the Department of Corrections and Rehabilitation.

_____
BROMBERG, J.

WE CONCUR:

_____
DANNER, ACTING P. J.

_____
WILSON, J.

*People v. Navarro*
H050626