Filed 8/17/21  P. v. Williams CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>VINCENT THOMAS WILLIAMS,<br><br>Defendant and Appellant. | A157836<br><br>(County of San Mateo Super. Ct. No. 19NF000875B) |

Defendant Vincent Thomas Williams appeals from a judgment of conviction after a jury trial on multiple counts of identity theft arising from police officers' encounter with him in a South San Francisco hotel room. Williams claims that the trial court erred by admitting evidence of a 2015 incident to prove Williams's knowledge regarding the charged offenses; that the court erred by denying his new trial motion, which he based on the prosecutor's prejudicial misconduct in closing argument and violation of *Doyle v. Ohio* (1976) 426 U.S. 610 (*Doyle*); and that his counsel provided ineffective assistance by failing to object to the prosecutor's showing of body camera footage to the jury in violation of a motion in limine ruling. He also argues a sentence enhancement imposed under section 667.5, subdivision (b) must be stricken under a subsequent amendment to section 667.5, subdivision (b). We affirm the conviction but strike the one-year sentence enhancement.

1

## BACKGROUND

In February 2019, the San Mateo District Attorney charged Williams, as well as Ronette Marlene Torres, who was not tried with Williams and is not a party to this appeal, with one count of multiple identity theft (Pen. Code, § 530.5, subd. (c)(3)[1]) and ten counts of identity theft with a prior conviction (*id.*, subd. (c)(2)). The prosecutor sought to prove these charges through circumstantial evidence connecting Williams to the activities occurring in the hotel room in 2019 and evidence from a 2015 incident.

## I.

### *The 2019 Incident*

On January 8, 2019, at about 9:00 a.m., a South San Francisco police officer went to a South San Francisco hotel room as part of an investigation into the possible abuse of credit cards at the hotel involving a third party who was a registered guest for a hotel room rented to another third party. The officer never determined if the room was legitimately rented or not.

Outside the hotel room door, the officer first knocked and announced he was "housekeeping," upon which he heard "rustling throughout the room." After a couple of minutes, he announced himself as a police officer and ordered the occupants to open the door. He heard more rustling, which altogether was more than the "normal" amount, and movement inside the room. He then heard a toilet flush, which, in his experience, indicated an attempt to destroy evidence. He waited about another seven minutes after announcing himself as a police officer for another officer to arrive and they together tried to kick open the door. The room's occupants, who were Williams and Torres, then let them inside.

---

[1] Statutory references are to the Penal Code unless otherwise stated.

The officers detained Williams and Torres and searched the room. It was "lived in" and "not clean." Among other things, "[t]here was trash on the floor, empty food wrappers strewn about, clothes strewn about," and a backpack and a pair of what appeared to be new shoes with paper in them. The officer "located several small pieces of ripped-up paper," apparently in the trash can. When he "put those papers back together," he "noticed they contained names" and what appeared to be "the last four digits of credit cards." A small bag of suspected methamphetamine was found in Williams's pocket, two glass smoking pipes were found in the hotel room, and "little baggies, a broken scale, tubing and piping . . . used to smoke methamphetamine" were found in the room's bathroom.

A spiral notebook was found in the backpack. Its pages were of the same kind of paper as the strips of paper found in the room. Written on pages were what appeared to be phone numbers, credit card numbers and credit card expiration dates, and also a person's birthdate, address and net income. The officer had conducted "over a hundred investigations regarding identity theft, credit card theft, credit fraud, [and] things of that nature." Based on his training and experience, he understood that the kind of information contained in the notebook would allow a person to open a line of credit under a third party's name.

The officer moved a bed and noticed two cuts in the carpet, three feet apart; a pocket knife was found on the floor nearby, another was found on Williams's person and a third was found in a gray, pull-around suitcase. Under the cuts in the carpet were "numerous" credit cards, gift cards, debit cards, identification cards and driver's licenses, none of which had Williams's name on them. One credit card had Torres's name on it. Many of the cards showed signs of being altered. These included several cards displaying the

3

name "Eduardo Torres" and a couple of others displaying the name "Kimberly Matthews." Eduardo Torres's driver's license was also among the cards found; the officer's testimony implies that Williams looked like Torres.

The backpack also contained a car key. The officer went through the hotel parking lot pressing on the key's "beeper" and found a car that matched the key. The car was not registered to Williams. Inside it, the officer found more credit cards showing signs of alterations, including with the names "Eduardo Torres" and Kimberly Matthews" on them, another notebook, court papers regarding Torres and a bag containing women's clothing and third-party paperwork. Inside the notebook were written, in two different handwritings, more of what appeared to be the last four digits of credit cards and the like. The officer also found a credit card application in Matthews's name.

Video from the officer's body camera of police encountering, detaining and questioning Williams at the hotel room was played for the jury. Upon his opening the door, Williams claimed he did not hear the police knocking because he was sleeping. He said he did not have any identification with him, that Torres was his girlfriend and that they had been dating for a "[l]ong time." They were visiting a friend, a girl whom he knew by the name of "Pussycat" or "Cat" or "somethin' like that," who had been in the room "earlier last night." Williams said he saw the friend at a gas station when he stopped there for gas on his way to San Francisco from his parents' house in San Bruno, then said he did not meet her at the gas station but instead met her at a Denny's or maybe an IHOP. The friend invited him to come over to her hotel room, he and Torres got there "early in the morning" and they had been there four, maybe six hours. He denied flushing anything down the toilet and said he did not know in whose name the room was rented.

4

## II.

### *The 2015 Incident*

As we will discuss further in the discussion section, the trial court allowed the prosecutor to introduce evidence that in 2015 police encountered Williams and Torres in a hotel room in circumstances very similar to those police encountered in 2019. A San Bruno police officer testified that in November 2015, he and other officers sought out Williams at a hotel room in San Bruno. When they announced themselves at the hotel room door, they heard a toilet flushing. They were not allowed into the room until about seven minutes later, and found both Williams and Torres inside with methamphetamine, drug paraphernalia, credit card numbers written on pieces of paper, including a piece crumbled up in the trash, and a backpack belonging to Torres containing twenty-four gift cards and a large quantity of sandpaper. Officers also discovered twelve gift cards and two Mexican consulate cards "stuffed inside" a standpipe of the room's toilet tank "as if they were concealed in there manually." None of the cards found in the hotel room bore the names of Williams or Torres. Multiple cards showed signs of being altered, containing such things as an irregularly placed number, numbers on front and back that did not match or no data whatsoever. The contents of the backpack indicated it belonged to Torres.

The officer testified that, based on his training and experience, the items found the hotel room indicated Williams was engaging in identity theft. The information magnetically stored on a gift card could be replaced with that of a valid credit card, and embossings could be sanded down and replaced with a name and credit card number.

## III.

### *Verdict, Motion for New Trial, Sentencing and Appeal*

The jury found Williams guilty of all charges. Williams then filed a motion for new trial on the grounds that the prosecutor in closing argument engaged in misconduct and committed a *Doyle* error. At the hearing on the motion, Williams's counsel asserted a third ground, that body camera footage of officers questioning Williams was shown to the jury in violation of the court's ruling on a motion in limine. The court declined to consider the third ground because counsel did not timely raise it. It rejected the defendant's arguments on the two issues he did timely raise and denied the motion.

In July 2019, the court sentenced Williams to a prison term of eight years, which included an upper term of three years for one count of identity theft with a prior conviction (§ 530.5, subd. (c)(2)) plus a one-year term under section 667.5, subdivision (b) for a prior larceny conviction in 2013, to run consecutively; and a mid-term of eight months for each of six additional counts of identity theft with a prior conviction, also to run consecutively. The court imposed various fines and fees and awarded Williams custody and conduct credits totaling 352 days.

Williams filed a timely notice of appeal.

## DISCUSSION

## I.

### *Any Error by the Court in Admitting Evidence of the 2015 Incident Was Harmless.*

Williams argues that the trial court's motion in limine ruling that the 2015 incident could be used to prove knowledge that the cards were in the hotel room was erroneous because "the 'knowledge' exception of [Evidence Code] section 1101[, subdivision] (b) cannot be used to prove possession or knowledge that an item is within a hotel room." The trial court

6

"misconstrued the law applicable to Evidence Code section 1101, subdivision (b) and [thus] abused its discretion." Williams contends that the 2015 evidence was not relevant to whether he had knowledge of the third-party credit cards that were hidden under two cuts in the carpet in the hotel room in 2019. Williams also contends that the evidence was not relevant to whether he met the first prong of the fraudulent possession charges, that of "acquiring or keeping the personal identifying information." Allowing the evidence to be used for that purpose, Williams implies, was a backdoor way of allowing the jury to determine his guilt for the 2019 offense based on a propensity shown by the 2015 incident. Williams further contends the trial court's error was prejudicial under the federal standard for error because it relieved the prosecution of its burden of proving every element of the offense beyond a reasonable doubt.

The People do not address Williams's argument that the trial court erred in admitting the 2015 evidence, but contend any error was harmless. We do not necessarily agree with Williams that the trial court erred in admitting the 2015 evidence, but we need not decide that issue. Assuming for the sake of argument that the court did err, we agree with the People that the error was harmless.

## A. The Relevant Proceedings Below

Under Evidence Code section 1101, subdivision (b), a court may admit "evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as . . . intent, . . . knowledge . . .)." The prosecution moved in limine under section 1101, subdivision (b) to admit evidence of the 2015 incident in order to prove Williams's "knowledge and intent," as required to prove his guilt on the charges against him. The charges were all brought under section 530.5, subdivision (c)(2) or

7

subdivision (c)(3), which required the prosecution to show Williams, "with the intent to defraud, acquire[ed] or retain[ed] possession of the personal identifying information."[2]

In a written motion in limine to admit the 2015 evidence, the prosecutor noted that prior uncharged acts are admissible under Evidence Code section 1101, subdivision (b) to prove such things as intent and knowledge and "where the uncharged misconduct and the charged offense are sufficiently similar to support the inference that they are manifestations of a common design and plan." The prosecutor argued that the least degree of similarity is required to prove intent. She summarized her proffer of the 2015 evidence as follows: "[The officer] arrived at defendant's hotel room, knocked, and demanded entry. He heard the toilet flushing twice, an occupant try to climb out of the window and, upon entry, found . . . Vincent Williams and Ronnette [*sic*] Torres inside. [¶] Inside the room's trash can and in the toilet tank were credit card applications, papers with credit card notes on them, gift cards, and Mexican consulate cards. Officers also located

_____

[2] Section 530.5, subdivision (c)(2) and subdivision (c)(3) states:

"(2) Every person who, with the intent to defraud, acquires or retains possession of the personal identifying information, as defined in subdivision (b) of Section 530.55, of another person, and who has previously been convicted of a violation of this section, upon conviction therefor shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment, or by imprisonment pursuant to subdivision (h) of Section 1170.

"(3) Every person who, with the intent to defraud, acquires or retains possession of the personal identifying information, as defined in subdivision (b) of Section 530.55, of 10 or more other persons is guilty of a public offense, and upon conviction therefor, shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment, or by imprisonment pursuant to subdivision (h) of Section 1170."

8

sandpaper, which was significant as some of the gift cards and credit cards had numbers sanded off. The gift cards had names embossed on them (gift cards do not have names embossed on them). [¶] The results of this investigation led to the defendant's plea . . . ." The prosecutor contended the 2015 incident and the 2019 incident were sufficiently similar to be admitted "to prove knowledge and intent in this case."

Williams's counsel opposed the motion because, he argued, the 2015 evidence could not produce any further insight into Williams's intent in the 2019 incident, since "there is no other explanation other than it's an intent to defraud." Moreover, the 2015 evidence was not admissible to prove "the only . . . issue in this case," which was whether "[Williams] in fact possess[ed] the cards." He further argued that whether Williams in fact possessed the hidden cards "doesn't have anything to do with knowledge or intent," which in his mind went to "the fact that they are obviously forged, fraudulent, et cetera."

The prosecutor then discussed the relevance of the 2015 incident, which, she said, "mirrors" the facts in this case:

"[Prosecutor]: Every element is at issue. If [defense counsel] believes that there is overwhelming evidence of intent, then he can stipulate to that element. I would be happy to accept that stipulation. But the prior, obviously, aids in a jury's determination of why they were possessed and I think even more importantly the knowledge that they were present in the room. They are hidden in these rips in the carpet after the defendant and Ms. Torres have been in the room for 20 minutes with the officer banging on the door outside. Their prior mirrors this scenario.

"They are in the hotel room, officers announce their presence, seven minutes go by, they hear flushing, wrestling in the room, same as in this

9

case. When the officers enter the room, there are credit cards, gift cards, consulate cards, credit card numbers on notebooks, in the toilet, out in plain view, and that obviously resulted in a conviction.

"I think for the defendant to then say in this case that he doesn't know anything about these cards in a situation that mirrors this 2015 prior is not giving the jury a complete picture of what's going on."

The court then asked whether the defendant sought to admit a statement in which he had told police "that he did not know the cards were in the room." The prosecutor replied, "He says he doesn't know anything about the stuff that's in the room as a whole."

The defense counsel did not deny this, but argued the two incidents were different. "This case is distinguishable from the previous one in that the previous one, somebody had tried to flush a whole bunch of credit cards and stuff like that down a toilet which didn't work because it was all jammed up in the toilet. There was nothing found in a toilet in this case."

After hearing from both counsel, the trial court ruled the evidence of the 2015 incident would be admitted. The court observed:

"There certainly are similarities between the incident in 2015 and the incident which makes the basis of the charges in this case that warrant consideration as to whether or not that evidence should be admissible in order to prove knowledge and intent.

"The People are correct in that they have to prove each element of these charges beyond a reasonable doubt. Similarities are that these same two individuals are in a hotel room, that contained within that hotel room is the personal identifying information of people other than them, that there is apparently voluminous amounts of this identifying information, that in both situations these cards and information are secreted.

10

"In the prior incident, it isn't just that they were flushed or attempted to be flushed down the toilet, but they were discovered in the tank of the toilet. As compared to this incident, they are hidden in a cut underneath the carpet in the hotel room.

"There is a delay by these same two parties in both incidents once they are made aware that police are outside the door seeking entrance, and those are certainly facts which warrant admissibility.

"Under [section] 352 of the Evidence Code, it is so much more probative than it is prejudicial because it is extremely probative on the very issues that [the prosecutor] has identified, that is knowledge and intent. What is the defendant's knowledge that the information is in the room where he is located and what is his intent in having that information contained within the hotel room? And that is so much more probative than any prejudice that would inure to the defendant.

"So the court will allow the prosecution to present testimony and evidence. I'm not going to allow, however, the fact of a conviction from the 2015 case to be admitted for purposes of proving knowledge and intent in this case."

As we have discussed, an officer of the San Bruno Police Department who in 2015 encountered Williams and Torres in the hotel room testified at trial. Over Williams's objection, the court instructed the jury to consider evidence of the 2015 incident in determining whether "A. [Williams] acted with the intent to defraud in this case" and "B. [Williams] knew that the cards discovered in the hotel room were present when he allegedly acted in this case."

11

**B. Analysis**

We conclude that any error was harmless by applying the state standard for error based on *People v. Watson* (1956) 46 Cal.2d 818, 836, i.e., it was not reasonably probable that a result more favorable to Williams would have been reached in the absence of the purported error. This is the standard generally used in evaluating the prejudicial effect of errors regarding the admission of prior acts evidence. (*People v. Washington* (2021) 61 Cal.App.5th 776, 787, 789-790 [applying the *Watson* standard in evaluating whether an Evidence Code section 1101 ruling admitting a prior conviction, if erroneous, caused prejudice]; *People v. Megown* (2018) 28 Cal.App.5th 157, 167 [same].)

Williams argues that we should apply the federal standard for error based on *Chapman v. California* (1967) 386 U.S. 18, 24 because the court's error was one of law that "relieved the state of the burden of proof on an element of the offense in violation of appellant's due process rights and undermined the fundamental fairness of his trial." He bases this contention on the conclusory argument that the court's admission of evidence that was not relevant to his knowledge about the hidden cards reduced the prosecution's burden of proof. Specifically, he claims it allowed the jury to find that Williams acquired or possessed these cards by a "preponderance of the evidence," rather than beyond reasonable doubt, because the latter was the standard by which the prosecution needed to prove the 2015 incident had occurred. We disagree.

The court instructed the jury using CALCRIM No. 375, as follows:

"The People presented evidence that the defendant committed another offense that was not charged in this case. The "uncharged offense" refers to the incident in the hotel room in 2015.

12

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offense. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether:

"A. The defendant acted with the intent to defraud in this case;

"B. The defendant knew that the cards discovered in the hotel room were present when he allegedly acted in this case.

"In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offense and the charged offenses.

"Do not consider this evidence for any other purpose.

"Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.

"If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of any of the crimes charged. The People must still prove each charge beyond a reasonable doubt."

This instruction was consistent with California law and did not reduce the prosecution's burden of proof. The Supreme Court has " 'long held that "during the guilt trial evidence of other crimes may be proved by a

13

preponderance of the evidence . . . .” ’ ” (*People v. Virgil* (2011) 51 Cal.4th 1210, 1259.)  That the court's instruction referred to this standard did not alter the jury's charge to determine whether Williams was guilty of the charged offenses beyond a reasonable doubt, of which the jury was reminded at the end of the instruction.  Our Supreme Court has explained, "these different standards of proof are reconciled by the different purposes for which the evidence is used.  When evidence of uncharged conduct is admitted for the purpose of establishing identity or intent, we have explained that the crimes are mere 'evidentiary facts.'  [Citation.]  The jury cannot consider them at all unless they find them proven by preponderance of the evidence.  'If the jury finds by a preponderance of the evidence that defendant committed the other crimes, the evidence is clearly relevant and may therefore be considered.  [Citations.]'  [Citation.]  If the jury finds the facts sufficiently proven for consideration, it must still decide whether the facts are sufficient, taken with all the other evidence, to prove the defendant's guilt beyond a reasonable doubt."  (*Id*. at pp. 1259-1260.)

Thus, in *People v. Reliford* (2003) 29 Cal.4th 1007, 1016 (*Reliford*), our Supreme Court held that CALJIC No. 2.50.01 did not unconstitutionally permit the jury to convict solely on a finding that the defendant committed the prior uncharged offense, and thus did not permit conviction on proof less than beyond a reasonable doubt.  The court noted that "the instruction nowhere tells the jury it may rest a conviction solely on evidence of prior offenses."  (*Id*. at p. 1013.)  Rather, the court instructed the jury that a finding of the uncharged offense was " 'not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime.' " (*Ibid*.)  Because the jury was also instructed to consider the instructions as a whole, the challenged instruction could not be interpreted to authorize a guilty verdict

14

solely on proof of uncharged conduct. (*Ibid*.) The court concluded, "Viewed in this way, the instructions could not have been interpreted to authorize a guilty verdict based solely on proof of uncharged conduct." (*Ibid*.)

Here, as in *Reliford*, the court's instruction did not inform the jurors that they could rest a conviction solely on evidence of the 2015 incident. And contrary to Williams's argument in his effort to distinguish *Reliford*, the jury was not instructed it could decide any element of the charged offenses based on the 2015 evidence. To the contrary, the instruction told them that the evidence was "not sufficient by itself to prove that the defendant is guilty of any of the crimes charged" and that, if it concluded Williams had committed the uncharged offense, "that conclusion is only one factor to consider along with all the other evidence." Further, the instruction stated, "The People must still prove each charge beyond a reasonable doubt." The jury was further instructed to consider all of the instructions together, and that in order to find appellant guilty beyond a reasonable doubt, they must consider all the evidence. Thus, as with the instruction in *Reliford*, it is not "reasonably likely a jury could interpret the instructions to authorize conviction of the charged offenses based on a lowered standard of proof." (*Reliford*, *supra*, 29 Cal.4th at p. 1016.)

Applying the *Watson* standard here, it is apparent that any error in admitting the 2015 evidence to show Williams's knowledge in 2019 of cards hidden in the two cuts in the hotel room's carpet was of only minor significance for several reasons.

First, Williams does not dispute that the 2015 evidence was properly admitted to show his *intent to defraud*, if the jury had determined he acquired or possessed the hidden cards. Thus, the jury would have heard all of the 2015 evidence under any circumstance. (See *People v. Foster* (2010)

50 Cal.4th 1301, 1329, 1332-1333 [where prior crimes evidence was properly admitted to prove intent and plan, any error in allowing jury to consider it to establish defendant's identity was harmless because jury would have heard evidence anyway for proper purposes and other evidence established his identity].)

Second, there was ample evidence supporting an inference that Williams knew about the hidden cards in 2019 even without the 2015 evidence.[3] The circumstantial evidence regarding the 2019 incident, which was similar to the evidence from 2015, *itself* strongly supported the inference that Williams knew about the hidden cards. He was in the hotel room with Torres; he and Torres delayed answering the door; the officer heard a lot of rustling and heard the toilet flush; the hotel room was disheveled with clothing and trash strewn about; police found torn up papers in the trash can containing names and partial credit card numbers and a backpack containing a notebook with similar information; they found cuts in the carpet and multiple pocket knives (including one on Williams' person and one under the bed near the cuts in the carpet); and inside those cuts, they found numerous third-party identification cards, credit cards and gift cards. The significant delay in opening the door, the flurry of activity reflected by the noises and the chaotic state of the room, and the hiding and destruction of evidence together supported the inference that both occupants were engaged in the concealment. Also, when police spoke with Williams, he dissembled when asked how he came to be in the hotel room. All of this evidence suggested consciousness of guilt on the part of Williams as well as Torres.

---

[3] The circumstances in 2015 were probative of Williams's knowledge of the hidden gift cards and consciousness of guilt in that incident, but the connection between his state of mind in 2015 and his specific knowledge of the stolen cards found during the 2019 incident is more attenuated.

Finally, Williams overlooks all the incriminating evidence in the hotel room and the car that was not hidden under the carpet. Along with what we have just mentioned, the scraps of paper found in the trash can of the hotel room matched the paper in the notebook found in the backpack, which was connected to Williams because it contained the key to the car that Williams admitted he had driven. Altered cards found in the car contained names of two people also found on cards hidden under the cuts in the hotel carpet. The credit card numbers in the notebook found in the car were made in different handwriting, suggesting more than one person wrote in the notebook. Finally, Williams indicated that Torres was his long-time girlfriend, making it even more likely that they were working together on the fraudulent scheme.

In short, any error by the trial court in admitting the 2015 evidence to show Williams's knowledge of the cards hidden under the two cuts in the hotel room carpet in 2019 was harmless.

## II.

### *The Court Did Not Err by Denying Williams's Motion for a New Trial.*

Williams challenges on three grounds the trial court's denial of his motion for a new trial. He contends: first, the prosecutor mischaracterized certain evidence during closing argument, thereby engaging in prosecutorial misconduct; second, the prosecutor committed *Doyle* error by referring during closing argument to Williams's failure to answer officers' questions when he had already invoked his *Miranda* rights; and, third, his counsel provided ineffective assistance by failing to object to the prosecutor's showing of certain body camera footage to the jury in violation of one of the court's motion in limine rulings. We disagree with all three arguments.

17

A court may grant a new trial when the court "has erred in the decision of any question of law arising during the course of the trial, [or] the district attorney or other counsel prosecuting the case has been guilty of prejudicial misconduct during the trial thereof before a jury." (§ 1181, subd. (5).)  A trial court " 'has broad discretion in ruling on a motion for a new trial, and there is a strong presumption that it properly exercised that discretion.' "  (*People v. Fuiava* (2012) 53 Cal.4th 622, 730.)

## A. The Court Did Not Err in Rejecting Williams's Prosecutorial Misconduct Claim.

Williams argues the prosecutor engaged in misconduct in closing argument by mischaracterizing the evidence to contend the backpack found in the hotel room and the car parked in the hotel lot belonged to him.  Also, Williams, anticipating the People's argument that his counsel's failure to timely object forfeited his claim of prosecutorial misconduct, also argues that he received ineffective assistance of counsel.  The People do in fact raise forfeiture, deny Williams received ineffective counsel and argue his claim lacks merit.  We agree with the People.

### 1. *Relevant Proceedings Below*

In her closing and rebuttal arguments, the prosecutor repeatedly contended the car parked in the hotel lot (which contained incriminating cards) and the backpack found in the hotel room (which contained incriminating evidence and the car's key) belonged to Williams.  Williams's counsel did not object but instead asserted in closing argument that no evidence showed Williams owned the car.

In his motion for a new trial, Williams took issue for the first time with the prosecutor's contention that he owned the backpack.  He argued it constituted prosecutorial misconduct because it was not "supported by the evidence" and "it falsely created a link between Mr. Williams and the vehicle

18

in which fraudulent cards were found." The prosecutor argued in opposition that it was reasonable to conclude that Williams owned the backpack because it contained a key matching a car in the hotel lot that Williams had indicated he had driven to the hotel. The court rejected the prosecutorial misconduct argument, reasoning, "The argument that [the prosecutor] made was completely an appropriate inference as it relates to the backpack which was found on the bed in the room where Mr. Williams and the codefendant who was not a participant in this trial had been residing. He, I believe, admitted that he had driven a car to the parking lot. There was some testimony as it relates to that."

### 2. *Analysis*

#### a. Williams Has Forfeited His Claim of Prosecutorial Misconduct.

Williams does not contest that his trial counsel neither objected to the prosecutor's statements nor asked the trial court to admonish the jury about them. Therefore, Williams has forfeited his prosecutorial misconduct claim. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1328 ["It is well settled that making a timely and specific objection at trial, and requesting the jury be admonished . . . is a necessary prerequisite to preserve a claim of prosecutorial misconduct for appeal"].)

#### b. Williams's Trial Counsel Did Not Provide Ineffective Assistance by Failing to Object.

To establish ineffective assistance of counsel, " 'a defendant must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to defendant . . . .' " (*People v. Thompson* (2010) 49 Cal.4th 79, 122.) Where a defendant argues on appeal that counsel's failure to raise a timely objection at trial amounts to ineffective

19

assistance of counsel, "a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Thus, "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. (*Ibid.*) "Counsel is not ineffective for failing to make frivolous or futile motions." (*People v. Thompson*, at p. 122.)

Williams's ineffective assistance argument rests on his assertion that "[t]rial counsel could have no tactical reason" not to timely object to the prosecutor's statements about Williams's ownership of the backpack. His argument is unpersuasive for two reasons.

First, there was no misconduct and, therefore, no ineffective assistance by a failure to object. A prosecutor commits misconduct when engaging in conduct that " 'either infects the trial with such unfairness as to render the subsequent conviction a denial of due process, or involves deceptive or reprehensible methods employed to persuade the trier of fact.' " (*People v. Ghobrial* (2018) 5 Cal.5th 250, 289.) Impermissibly deceptive methods include arguments that employ "facts or inferences not based on the evidence presented." (*People v. Lewis* (1990) 50 Cal.3d 262, 283). A prosecutor, however, "has a wide-ranging right to discuss the case in closing argument," including "to fully state his views as to what the evidence shows and to urge whatever conclusions he deems proper." (*Ibid.*) This " 'include[s] reasonable inferences, or deductions to be drawn therefrom.' " (*People v. Wharton* (1991) 53 Cal.3d 522, 567; see also *People v. Sandoval* (2015) 62 Cal.4th 394, 439

[prosecutor reasonably inferred defendant had altered his appearance since committing the crime "to deceive the jury"].)

Williams argues the prosecutor's claim that the backpack belonged to him "rest[s] upon speculation," and that the prosecutor did not produce evidence that defendant owned it. We disagree. The evidence indicates that Williams drove the car found in the hotel lot, and that its key was in the backpack found in the hotel room where Williams and Torres were discovered by police. Under these circumstances, it was reasonable to infer the backpack belonged to him or to him and his girlfriend jointly.

Williams argues that, since Ms. Torres was also in the hotel room and could have owned the car, "it is just as likely that appellant handed the key to her after he parked it, and she put her key in her backpack." Assuming for the sake of argument that this is a reasonable inference from the evidence, it nonetheless does not eviscerate the merit of the prosecutor's inference. "The fact that [another] inference[] could also have been drawn does not invalidate the argument or render it impermissible." (*People v. Lewis*, *supra*, 50 Cal.3d at p. 285.)

Second, even if Williams's counsel could have raised a meritorious objection, he could have reasonably decided to combat the prosecutor's contentions in other ways. For example, he could have preferred to challenge them in his own closing argument, which he in fact did when he contended there was no evidence that Williams had any connection to the car parked in the hotel lot. He may not have wanted to draw attention to the backpack, reckoning that it would only serve to highlight its significance (see *People v. Seumanu*, *supra*, 61 Cal.4th at p. 1313) and preferred that the jury simply consider the evidence found in the car, such as court papers mentioning her

21

name and female clothing, that suggested Torres, not Williams, owned it. Williams's ineffective assistance claim fails for this reason as well.

### B. The Court Did Not Err in Rejecting Williams's *Doyle* Error Claim.

Williams also argues the court erred in rejecting his argument that the prosecutor's reference in closing argument to Williams's inability to straightforwardly answer officers' "easy question[s]" about how he ended up in the hotel room violated *Doyle* by impermissibly using his invocation of his *Miranda* rights against him. We disagree.

#### 1. *Relevant Proceedings Below*

At trial, the prosecutor showed the body camera footage of the arresting officer's interrogation of Williams at the hotel and questioned the arresting officer about the footage. The officer acknowledged that his body camera had run out of battery during this interrogation, and then offered, unsolicited, that "[a]fter that, [Williams] invoked his right to counsel." Defense counsel raised a *Doyle* objection and moved for a mistrial, arguing that a curative instruction to the jury would only draw further attention to Williams's invocation of the right to counsel. The court denied the motion, finding that the prosecutor did not intend to elicit the arresting officer's comment. It agreed that a curative instruction would only emphasize the officer's statement and instead ordered the prosecutor not to refer "to either the officer's testimony or said invocation of the right to counsel."

In closing argument, the prosecutor commented without objection on Williams's difficulty in answering questions by police, "like, 'How did you get here?' That is an easy question. 'Um, I drove at a gas station. No, I didn't meet her there. Actually, the Denny's. The IHOP.' That's an easy question. How did you get here? And he won't even answer that."

Williams argued again in his new trial motion that the prosecutor committed *Doyle* error in light of the officer's testimony regarding Williams's invocation of his *Miranda* rights, asserting that the court should reevaluate its denial of his previous objection in light of all of the evidence presented. After hearing argument on the issue, the court affirmed its previous ruling that no *Doyle* error had occurred.

### 2. *Analysis*

Under *Doyle*, "the use against defendant of a postarrest invocation of rights following a *Miranda* admonition violates due process." (*People v. Thomas* (2012) 54 Cal.4th 908, 936.) This is because such an admonition "inform[s] a person of his right to remain silent and assures him, at least implicitly, that his silence will not be used against him." (*Anderson v. Charles* (1980) 447 U.S. 404, 407-408.) Thus, a prosecutor may use a defendant's statements made after receiving a *Miranda* admonition for impeachment purposes when the defendant volunteers to speak to authorities, as "the defendant has not remained silent at all." (*Id.* at p. 408; see also *People v. Collins* (2010) 49 Cal.4th 175, 203 ["*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements," following *Anderson*].)

Williams argues the prosecutor in closing argument intended the jury to connect the prosecutor's reference to Williams's inability to straightforwardly answer the officers' questions regarding how he ended up in the hotel room to his later invocation of his *Miranda* rights—although he acknowledges the prosecutor made no "specific reference" to that invocation—and further intended the jury to "infer that [Williams's] silence was evidence of guilt." We disagree. Courts "do not lightly infer that the prosecutor intended [her] remarks to have their most damaging meaning or that the jury

23

drew that meaning rather than the less damaging one." (*People v. Howard* (1992) 1 Cal.4th 1132, 1192 [prosecutor's statement that " '[the victim] was a member of our community' " cannot be fairly understood as an appeal " 'to potential xenophobic prejudice' " against the defendant].) Thus, we will not lightly infer the tortuous connection Williams argues was intended here. The prosecutor's closing argument statement, rather than point out Williams's refusal to answer questions upon his invocation of his *Miranda* rights, merely referred to Williams's inability to straightforwardly answer how he ended up in the hotel room when he *voluntarily* spoke to officers before invoking those rights. The court correctly rejected Williams's *Doyle* error argument.

## C. Williams's Counsel Did Not Provide Ineffective Assistance by Not Objecting to the Body Camera Footage.

Williams also asserts his counsel rendered ineffective assistance by failing to object to the prosecutor's showing body camera footage to the jury in which officers accused Williams of lying. Williams argues this footage should have been redacted under one of the court's in limine rulings.

### 1. *Relevant Proceedings Below*

Williams moved in limine for the "exclusion of questions regarding opinions about defendant's guilt and truthfulness or lack thereof of witnesses." The court granted the motion without objection. During trial, the prosecutor showed body camera footage of Williams's interactions with police at the hotel. Part of the footage showed officers accusing him of lying to them, to which Williams's counsel made no objection.

At the hearing for a new trial, Williams's counsel argued for the first time that this footage depicted "a witness' opinion regarding the truthfulness of someone," thereby violating the court's motion in limine ruling. He acknowledged that he had not timely objected to the prosecutor's use of this footage at trial. The court declined to consider the issue because Williams

24

had not given proper notice of it by raising it in Williams's written motion for new trial.

### 2. *Analysis*

Williams argues that his trial counsel's failure to object to the body camera footage that showed officers calling him a liar amounts to ineffective assistance of counsel. We disagree.

We have already discussed what is required to establish ineffective assistance of counsel. Williams fails to establish it here because his counsel could have reasonably concluded any objection would be denied, since the court's motion in limine ruling only prohibited *testimony* by *witnesses* about Williams's guilt or truthfulness. The motion, too, only targets the questioning of witnesses. In its first sentence, the motion seeks to prevent the prosecutor from "attempt[ing] to elicit an opinion from any witness regarding whether another witness' judicial statements were truthful." The prosecutor's use of the footage involved neither its eliciting of a witness's opinion nor any testimony. Therefore, it did not violate the court's ruling and the court almost certainly would have denied an objection on that ground. Counsel's failure to make an unmeritorious objection is not ineffective assistance.

### III.

### *The Section 667.5, Subdivision (b) Enhancement Must Be Stricken.*

Williams next contends the one-year sentence enhancement under section 667.5, subdivision (b), which the court imposed as part of Williams's conviction for committing identify theft in violation of section 530.5, subdivision (c)(2), must be stricken based on recent legislation amending section 667.5, subdivision (b). The People concede that the amendment,

effective January 1, 2020, applies retroactively to Williams's sentence. We agree.

Under former section 667.5, subdivision (b), a trial court could impose an additional one-year term for a prior, separate prison or county jail term imposed under section 1170 when a defendant is convicted of a felony such as Williams committed by violating section 530.5, subdivision (c)(2). (See Stats. 2018, ch. 423, § 65.) Under this provision, in July 2019 the court imposed on Williams an additional one-year term for a 2013 larceny conviction.

Senate Bill No. 136, signed into law by the Governor in October 2019, amended section 667.5, subdivision (b) to impose an additional one-year term *only* if the prior prison term was for certain sexually violent offenses listed in Welfare and Institutions Code section 6600, subdivision (b). (*People v. Lopez* (2019) 42 Cal.App.5th 337, 340-341.) The amendment applies retroactively to defendants whose judgments were not yet final as of that date, including judgments still on appeal. (See *People v. Petri* (2020) 45 Cal.App.5th 82, 94 [" 'a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed' "].)

The judgment here is not yet final. His prior prison term for which the court imposed an additional year sentence was for larceny, which is not a sexually violent offense. Therefore, the one-year enhancement sentence should be stricken.

We need not remand to the trial court for resentencing because, where "the trial court imposed the maximum possible sentence" for the underlying offense, "there is no need for the court to again exercise its sentencing discretion." (*People v. Lopez*, *supra*, 42 Cal.App.5th at p. 342.) The maximum sentence for a count of identity theft with a prior conviction under section 530.5, subdivision (c)(2)) is three years (§ 1170, subd. (h)(1)), which

26

the court imposed here.  Therefore, we will strike the section 667.5, subdivision (b) enhancement sentence rather than remand for further sentencing.

## DISPOSITION

The judgment is affirmed except that the one-year enhancement imposed under section 667.5, subdivision (b) is hereby stricken.  We direct the trial court to prepare an amended abstract of judgment reflecting this modification and forward a copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation.

 

 

_____

STEWART, J.

We concur.

_____

RICHMAN, Acting P.J.

_____

MILLER, J.

_People v. Williams_ (A157836)

28