Filed 10/26/21  P. v. Sarwar CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROHAIL SARWAR,<br><br>    Defendant and Appellant. | C090687<br><br>(Super. Ct. No. CRF 2018-4967) |

A jury found defendant Rohail Sarwar guilty of first degree murder and found true several special circumstances, including that defendant committed the murder by lying in wait.  On appeal, defendant contends the lying-in-wait finding lacks sufficient evidence and he also challenges the admissibility of evidence relating to a sexual assault he committed the day before the murder and evidence he viewed pornography before and after the murder.  We will affirm.

1

# BACKGROUND

## *The Murder*

On August 21, 2018, around 3:43 p.m., defendant went to a liquor store and bought a knife and a beer. He had to be shown how to close the knife blade and defendant pressed his finger to the blade appearing to test its sharpness. Defendant then drank the beer within the liquor store while staring towards a massage parlor that was within the same shopping center. A few minutes later defendant left the store and walked over and entered the massage parlor. Junying Lu, who went by Lucy, was giving a massage to another customer and told defendant to come back later.

Defendant returned to the liquor store around 4:29 p.m. and continued drinking his beer. After being asked to leave the store, defendant exited and stood outside finishing his drink and continued watching the massage parlor. Immediately after the other customer left the massage parlor defendant walked back over around 4:34 p.m. and entered the massage parlor again.

Defendant was in the massage parlor for about 50 minutes. During this time defendant stabbed or cut Lucy about 20 times in the head, abdomen, and hands, killing her. She was later found in the back of the massage parlor, outside of all the massage rooms, lying in a pool of blood.

Around 5:24 p.m., defendant left the massage parlor and walked home. Videos from the shopping center showed defendant leaving with his hands covered in blood and touching a crosswalk button, which was later tested and found to likely have blood from Lucy and defendant.

That night, defendant called his boss I.A. to tell him a woman nearby was killed because she "got stabbed in the stomach many time[s]." Defendant also provided I.A. a hypothetical on how and why it could have happened: "The person go over there for a massage and he got the massage, and ask her for sex. And she refused that, and the person is paying her money and going out of the door, and she going back to where she

2

put the money, and the person turned around, go back, and kill her over there." Defendant indicated the person killed her because "she refused the sex."

### *Conduct Prior to the Murder*

Defendant had an affair with T.N., I.A.'s wife, for several months prior to the murder. On August 20, 2018, the day before the murder, T.N. was driving defendant when they got into an argument, defendant started hitting her, and forced her to go to a hotel to talk. When there, defendant tried to have sex with T.N. but she refused so he threatened to kill her and physically forced her to have vaginal and anal sex in the hotel. This was the first time he was violent with her.

The next day, the day of the murder, defendant continually called T.N. On one call at 3:30 p.m., defendant seemed "really desperate" and admitted to T.N. he was watching pornography. At trial, evidence from defendant's phone was submitted showing he frequently visited pornography sites and had about 400 videos on his phone of sexual or pornographic content. He admitted to T.N. shortly before the murder that he had been addicted to pornography for some time.

Defendant had also attacked another employee at the massage parlor before he killed Lucy. Around August 1, 2018, during a massage from S.X., defendant grabbed her neck and tried to take her clothes off, only letting her go after she threatened to call the police. Defendant then urinated on the massage table and left. S.X. and Lucy started referring to defendant in private as the "pee guy," and right before defendant killed Lucy, Lucy called S.X. and told her the "pee guy" was there. S.X. told Lucy to refuse to provide him a massage but the call ended abruptly.

### *Trial/Judgment/Sentencing*

Defendant was charged with the murder of Lucy (Pen. Code, § 187, subd. (a)) with the enhancements that defendant intentionally killed Lucy by means of lying in wait (*id.*, § 190.2, subd. (a)(15)), that the murder was committed during the commission or attempted commission of a burglary (*id.*, § 190.2, subd. (a)(17)), and that defendant

3

personally used a deadly weapon (*id.*, § 12022, subd. (b)(1).)  Defendant was also charged with assault against S.X. with intent to commit mayhem, rape, sodomy, or oral copulation (*id.*, § 220, subd. (a)).

Before trial, the court granted the prosecution's motion in limine to admit the noncharged sexual assault of T.N. under Evidence Code[1] sections 1108, 352, and 1101, subdivision (b).  On this evidence, the jury was given CALCRIM No. 1191A, stating the jury could only consider evidence of this uncharged assault if the prosecution "proved by a preponderance of the evidence that the defendant in fact committed the uncharged offense," but this assault "is not sufficient by itself to prove" defendant guilty of charged crimes.  The prosecutor also moved to admit the evidence that defendant was watching pornography shortly before and after the murder.  She explained this established defendant had the intent to sexually assault Lucy when he entered the massage parlor, which was the predicate felony for the burglary charge.  The court found this evidence "does have relevance.  Watching porn, purchasing a knife, and then going inside for what could be interpreted as a sexual assault at a point of, perhaps, arousal, and there's a reasonable inference that can be drawn from that."

The jury found defendant guilty on both counts and found all enhancements true.  Defendant was sentenced to an indeterminate term of life without the possibility of parole for the murder and a determinate term of seven years, comprised of six years for the assault and one year for the use of a deadly weapon.

---

[1] Undesignated statutory references are to the Evidence Code.

## DISCUSSION

## I

### *Sufficiency of the Evidence*

Defendant first contends there was insufficient evidence supporting the lying-in-wait special-circumstance finding. He claims there was no evidence he entered the massage parlor to kill Lucy and that "the brief period between the solicitation and the stabbing was not a period of 'watchful waiting.' " We disagree.

When presented with a claim of insufficient evidence, we examine the entire record to assess whether any rational trier of fact could have found defendant guilty beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Thus, "we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. ([*People v.*] *Boyer* [(2006)] 38 Cal.4th [412,] 480.) 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' ([*People v.*] *Maury* [(2003) 30 Cal.4th 342,] 403.) A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)" (*Ibid.*)

"Murder is the unlawful killing of a human being . . . with malice aforethought." (Pen. Code, § 187, subd. (a).) "[M]alice may be express or implied." (*Id.*, § 188, subd. (a).) Express malice "requires an intent to kill that is 'unlawful' because . . . ' ". . . there is no justification, excuse, or mitigation for the killing recognized by the law." ' " (*People v. Elmore* (2014) 59 Cal.4th 121, 133, italics omitted.)

5

The lying-in-wait special circumstance " 'is the functional equivalent of proof of premeditation, deliberation, and intent to kill.' " (*People v. Sandoval* (2015) 62 Cal.4th 394, 416.) To establish an intentional murder was committed through lying in wait, the prosecutor must prove: " '(1) a concealment of purpose, (2) a substantial period of watching and waiting for an opportune time to act, and (3) immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage.' " (*Ibid.*; *People v. Morales* (1989) 48 Cal.3d 527, 557, disapproved on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 459.) This " 'presents a factual matrix sufficiently distinct from "ordinary" premeditated murder to justify treating it as a special circumstance.' " (*Sandoval,* at p. 416.) Although the period of watchful waiting must be " 'substantial,' " there is no fixed time limit on the requirement and " '[t]he precise period of time is also not critical.' " (*People v. Moon* (2005) 37 Cal.4th 1, 23 (*Moon*).) Instead, what matters is that " 'its duration is such as to show a state of mind equivalent to premeditation or deliberation.' " (*Ibid.*)

The prosecutor argued the evidence supports two possible incidences of lying in wait, and the jury had to find unanimously on at least one of them but did not have to disclose which one. The first scenario is defendant had lain in wait outside of the massage parlor and then killed Lucy once he entered. It is clear from the evidence defendant was waiting for the other customer to leave the massage parlor before he entered -- he was described as heading towards the massage parlor "[s]imultaneously, or within a second" from the other customer leaving. He also had very recently purchased a knife, tested the knife's sharpness, and had indicated to Lucy he was interested in a massage. A reasonable jury could have found from this evidence defendant lied to Lucy to obscure his intent and was waiting for her to be alone to kill her, justifying the lying-in-wait special circumstance.

Defendant contends the jury's burglary finding negates this as a viable lying-in-wait scenario. The burglary charge alleged defendant entered the massage parlor with the

6

intent to commit sexual battery. Since the jury found the murder occurred during the commission of a burglary, it must have found defendant entered the massage parlor to commit a sex offense, not murder. But defendant's argument presupposes it is not possible to hold multiple intents concurrently; this is not true. An intent to commit a sexual assault and an intent to commit a murder are not mutually exclusive. (*People v. Carpenter* (1997) 15 Cal.4th 312, 389 ["the jury could reasonably find that at the moment of the attack, defendant had a dual intent: to rape first, then kill"]; cf. *People v. Powell* (2018) 5 Cal.5th 921, 955 ["We have repeatedly held, however, that a defendant's possession of the intent to kill concurrently with the intent necessary to support a predicate felony does not necessarily render commission of the predicate felony incidental to the murder"].) Defendant also had committed at least two sexual assaults prior to killing Lucy and neither used a dangerous weapon. The purchase of the knife then further indicates an intent to kill in addition to an intent to commit sexual assault.

The second supportable lying-in-wait scenario is that defendant killed Lucy after he got a massage from her. Even if defendant entered the parlor with only an intent to commit sexual assault, there was substantial evidence he committed the murder while lying in wait after receiving a massage. Had the jury believed defendant murdered Lucy in the same manner defendant posed in the hypothetical killing to I.A., defendant would have killed Lucy after she rejected defendant's sexual advances. Defendant then allowed her to go into the back of the massage parlor, away from any of the massage rooms, to put away the money, thinking her interaction with defendant had concluded. But then, as defendant said, he "turned around, [went] back, and kill[ed] her."

This is comparable to *Moon*, where the defendant hid in the victim's house after killing the victim's daughter. Defendant allowed the victim to search the house for her daughter while "defendant made no effort to reveal his presence. . . . He thereby concealed both his presence and his purpose as he waited and watched for an opportune moment to attack her." (*Moon, supra*, 37 Cal.4th at p. 22.) The victim, who knew

7

defendant, eventually saw him and asked him what he was doing but the defendant remained silent "further concealing his purpose." The defendant then pushed the victim down some stairs and strangled her, "satisfying the element of a sudden or surprise attack on an unsuspecting victim." (*Id*. at p. 23; *id.* at p. 22.) Our Supreme Court found that, "[e]ven accepting defendant's testimony that he waited only a few scant minutes before killing [the victim], a few minutes can suffice" in satisfying the " 'substantial period of time' " element. (*Id*. at p. 23.)

Similarly here, a reasonable jury could have found that after Lucy rejected defendant's sexual advance, he formed the intent to kill her and hid this motive from her by pretending to leave the massage parlor, let her go into the back room, and then killed her by surprise. Even though this may have been a relatively short period of time, as in *Moon*, it was " 'of sufficient duration to establish the elements of waiting, watching and concealment or other secret design to take the victim unawares and by surprise.' " (*Moon, supra*, 37 Cal.4th at p. 24.)

We conclude the jury finding true the lying-in-wait special circumstance is supported by substantial evidence under either sequence of events.

## II

### *Uncharged Offense Against T.N.*

Defendant next argues the court incorrectly permitted the jury to consider the assault on T.N. if proven by the preponderance of the evidence because it was part of the chain of proof, which requires proof beyond a reasonable doubt. He also contends the evidence was more prejudicial than probative. Since this evidence contributed to the special circumstance finding for burglary, he asserts that finding must be reversed.

### A.  Standard of Proof

The People must prove all elements of a crime beyond a reasonable doubt. (*People v. Tewksbury* (1976) 15 Cal.3d 953, 963 (*Tewksbury*).) However, uncharged sexual offenses used to establish a defendant's propensity to commit such crimes under

8

section 1108 need only be proven by a preponderance of the evidence. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1012-1016 [requiring § 1108 evidence be proved by a preponderance of the evidence does not reduce the prosecution's burden of proof as to the charged offenses].) Our Supreme Court has found the language employed in the jury instruction provided here properly articulates this standard and does not permit jurors to improperly find a defendant guilty of the charged offense based solely on the uncharged offense. (*Reliford,* at p. 1013 ["Viewed in this way, the instructions could not have been interpreted to authorize a guilty verdict based solely on proof of uncharged conduct"].)

Defendant's argument relies on a proposition stated by our Supreme Court in *Tewksbury*: "When the People bear the burden of proof of a fact deemed to lie outside the direct chain of proof of an accused's guilt of the crime charged, they are not required to prove that fact beyond a reasonable doubt." (*Tewksbury, supra*, 15 Cal.3d at p. 965, fn. 12.) The court explained that facts outside the "direct chain of proof" are "collateral factual issue[s]" that do not bear directly on "any element of the crime" such as a public policy defense or a defense which challenges the reliability of incriminating evidence. (*Id*. at pp. 964-965.)

Defendant argues the propensity evidence here is part of the direct chain of proof and therefore must be proven beyond a reasonable doubt.

The appellate court in *People v. Anderson* (2012) 208 Cal.App.4th 851 rejected a similar argument. There, the jury was permitted to consider evidence of a prior lewd act to show the defendant's propensity to commit the charged sex offenses. (*Id.* at pp. 892-893.) The reviewing court found "the uncharged offenses were not in the direct chain of proof as that term is used in *Tewksbury*. Rather, a defendant's propensity to commit a particular type of crime, here lewd act, is the type of collateral fact addressed in *Tewksbury*. Anderson's propensity to commit such crimes does not 'bear directly on any link in the chain of proof of any element of the crime.' " (*Id.* at p. 897.)

9

We find *Anderson* persuasive, and defendant has not distinguished his case from *Anderson*. Defendant argues the burglary required a finding defendant entered the massage parlor with the intent to commit felony sexual battery, and "[i]n this chain of proof, the element of intent to commit felony sexual battery depended almost entirely on the prior incidents described by [T.N.] and [S.X]." This is incorrect. Like all propensity evidence, the assault on T.N. only made it more likely that defendant did intend to sexually assault Lucy but, as explicitly made clear in the instructions, this evidence could not by itself sustain any of the charged convictions. This evidence supported the other evidence establishing his intent to commit sexual battery, such as that he was watching pornography shortly before entering the massage parlor,[2] was seemingly desperate to have sex with T.N., and his statements to I.A. that the "killer" asked Lucy for sex. Based on the record, the uncharged sexual assault of T.N. was not in the direct chain of proof and the jury was properly instructed on the standard of proof.

## B. Section 352

As a secondary argument, defendant argues the evidence of his assault against T.N. inadmissible because it was more prejudicial than probative. We again disagree.

Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice." (§ 352.) "The prejudice which exclusion of evidence under . . . section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in . . . section 352 applies to evidence which uniquely tends to evoke an emotional bias against

---

[2] The admissibility of this evidence is discussed *post*.

the defendant as an individual and which has very little effect on the issues.  In applying section 352, "prejudicial" is not synonymous with "damaging." ' [Citation.]"  (*People v. Karis* (1988) 46 Cal.3d 612, 638; see *People v. Holford* (2012) 203 Cal.App.4th 155, 167.)  "Evidence is not inadmissible under section 352 unless the probative value is 'substantially' outweighed by the probability of a 'substantial danger' of undue prejudice or other statutory counterweights."  (*Holford,* at p. 167.)

"Prior to the enactment of . . . section 1108, evidence showing the defendant's disposition was excluded ' " 'not because it has no appreciable probative value, *but because it has too much*.' " ' [Citation.]  With the enactment of section 1108, however, trial courts may no longer deem such evidence unduly prejudicial per se, but must instead engage in a careful weighing process under . . . section 352.  Thus, when the evidence is admissible, it may support an inference—as the instruction provides—that the defendant is predisposed to commit sex offenses."  (*People v. Reliford, supra*, 29 Cal.4th at pp. 1012-1013.)

There are five factors particularly helpful in conducting this weighing analysis for section 1108 evidence:  "(1) whether the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show the defendant did in fact commit the charged offense; (2) whether the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or distract the jurors from their main inquiry, e.g., whether the jury might be tempted to punish the defendant for his uncharged, unpunished conduct; and (5) whether admission of the propensity evidence will require an undue consumption of time."  (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1117.)

We review a trial court's rulings on the admissibility of evidence for abuse of discretion.  (*People v. Benavides* (2005) 35 Cal.4th 69, 90.)

11

The evidence of defendant's assault on T.N. was not unduly prejudicial. Initially, a violent sexual assault the day before defendant murdered Lucy is highly probative to defendant's intent. The two acts also had a degree of similarity -- women who defendant had prior interactions with, who were alone in a secluded area, and who defendant attacked after demanding sex. Defendant's prior argument that the intent to commit a sexual battery element relied almost entirely on the prior assaults belies any argument against the probative nature of this evidence.

As for prejudice, defendant asserts the prejudicial effect was "enormous" because "[t]he jury surely put substantial reliance on [T.N.'s] allegation in concluding that appellant entered the massage parlor with the intent to commit a sex offense." Defendant is arguing it is prejudicial because it is too probative and therefore significantly weakened his defense. This is not the type of prejudice that can justify exclusion of evidence. Though evidence of defendant's assault on T.N. may have evoked a negative bias against defendant, it did so in direct relation to its relevance in establishing the charged offenses and was not more inflammatory than the charged act of murder. Any temptation to punish defendant for the assault of T.N. is less due to the significance of the murder charge and there was no indication T.N.'s testimony was unduly time consuming. Consequently, the trial court did not abuse its discretion in permitting evidence of the uncharged sexual assault of T.N.

### III

### *Pornography Evidence*

Finally, defendant argues the court improperly admitted evidence that defendant accessed pornography the day of the murder. Defendant contends this is inadmissible character or propensity evidence under section 1101 and could not be relevant for any other purpose.

With certain exceptions, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of

12

specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (§ 1101, subd. (a).) One such exception is found in subdivision (b) of this section, which provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive . . .) other than his or her disposition to commit such an act." (*Id.*, subd. (b).) We review the trial court's admission of other acts for abuse of discretion. (*People v. Lindberg* (2008) 45 Cal.4th 1, 25.)

The pornography evidence was not admitted to establish propensity or character. The trial court instead found this evidence relevant to show defendant was sexually aroused when he entered the massage parlor, which provided motive for his assault. "Where other crimes or bad conduct evidence is admitted to show motive, ' "an intermediate fact which may be probative of such ultimate issues as intent [citation], identity [citation], or commission of the criminal act itself" ' [citation], the other crimes or conduct evidence may be dissimilar to the charged offenses provided there is a direct relationship or nexus between it and the current alleged crimes." (*People v. Cage* (2015) 62 Cal.4th 256, 274.) There was a direct relationship between the pornography and the assault because defendant viewed the pornography while waiting for the massage parlor to be empty and immediately before walking over. There was evidence defendant intended to assault Lucy, including him buying a knife right before entering the parlor. The evidence defendant was consuming sexual content leading up to him entering the massage parlor made it more likely defendant's assault was sexually motivated.

This probative value was also not outweighed by any prejudice. The charged crimes of first degree murder involving a vicious killing of an unsuspecting victim were significantly more inflammatory than the evidence he watched pornography. As defendant's trial counsel pointed out, "there's nothing illegal about what porn [defendant] was looking at." So it was very unlikely the jury felt compelled to convict defendant of any of the charged offenses based on a desire to punish him for watching pornography.

13

(See *People v. Cordova* (2015) 62 Cal.4th 104, 133-134 ["because the uncharged crimes were not inflammatory compared to the charged crime, there was little prejudice"].)

Since this nonprejudicial evidence was introduced for relevant reasons other than character or propensity, there was no abuse of discretion in admitting this evidence.

DISPOSITION

The judgment is affirmed.

<br>

/s/
HOCH, J.

We concur:

/s/
ROBIE, Acting P. J.

/s/
MURRAY, J.